Paul F. STAUB and Nancy J. Staub, his wife, Appellants,

v.

TOY FACTORY, INC.

Paul F. Staub and Nancy J. Staub, his wife, Appellants,

v.

Karl Kenyon.

Paul F. Staub and Nancy J. Staub, his wife, Appellants,

v.

Grimm Industries Inc., Amthor Steel Inc., Carrara Steel Erectors Inc., and Carrara Steel Inc.

Superior Court of Pennsylvania.

Argued Sept. 8, 1999.

Filed March 23, 2000.

**524**

James R. Fryling, Erie, for appellants.

1. Barnhart is not a party to this case.

Louis C. Long, Pittsburgh, for Toy Factory, Kenyon & Grimm, appellees.

James T. Marnen, Erie, for Amthor Steel, Carrara Steel Erectors and Carrara Steel, appellees.

Before McEWEN, President Judge, and DEL SOLE, KELLY, POPOVICH, JOHNSON, FORD ELLIOTT, EAKIN, JOYCE and STEVENS, JJ.

FORD ELLIOTT, J.:

¶ 1 In this negligence/personal injury action, plaintiffs/appellants Paul and Nancy Staub appeal from the order dated November 5, 1997, granting summary judgment to defendants Grimm Industries, Inc., Toy Factory Inc., and Karl Kenyon ("collectively," the "Grimm defendants" or "Grimm"); and Carrara Steel Erectors, Inc., Carrara Steel, Inc., and Amthor Steel, Inc. ("collectively," the "Carrara defendants" or "Carrara"). We affirm in part, reverse in part, and remand.

¶ 2 The facts of the case are as follows. Appellant Paul Staub ("appellant") was employed by Barnhart Builders, Inc. ("Barnhart"), as a roofer.[1] Grimm Industries hired Barnhart to install insulation and other materials on the roof of a building being constructed for Toy Factory, Inc.[2] A Grimm Industries employee, Karl Kenyon, designed the building and coordinated the construction process. Grimm Industries hired Carrara to manufacture and erect the structural steel for the building. At Kenyon's request, a Carrara employee carved ten openings in the roof to accommodate skylights and ventilation devices, after which a Grimm Industries employee installed wooden "curbing" around the perimeter of the openings. The curbing was not, however, designed to safeguard the openings. Grimm and Carrara dispute when the openings were cut and which of the defendants, if any, was in charge of safeguarding the roof openings.

2. Grimm Industries and Toy Factory are closely related corporations which manufacture and assemble plastic toys.

No one covered the holes or otherwise safeguarded the openings in the roof.

¶ 3 Appellant was injured on December 3, 1993 while installing foam insulation sheets on the roof when he stepped backward, caught his ankle on the curbing around one of the holes, and fell through the hole. The procedure employed by appellant and his co-worker required appellant to walk backward so that he could catch the sheets of insulation his co-worker passed to him and then move them into place with his foot. The workers had to work quickly so that other workers could perform the next phase of the roofing process. Appellant knew the holes existed but could not see their exact location because he was walking backward; therefore, he would occasionally glance around to watch for the openings. He was, however, focused on catching the insulation sheets his co-worker passed to him when he encountered the first hole, tripped, and fell through. Although other Barnhart employees were on the roof at the time, no one, including appellant's co-worker, warned that he was approaching a hole. Appellant had worked on other roofs which had holes in them; however, this was the first time that appellant had installed insulation near the holes in this particular roof.

¶ 4 Appellants Paul and Nancy Staub[3] filed three separate complaints, which were consolidated for discovery and trial. The Grimm defendants then filed a motion for summary judgment, and the Carrara defendants filed an amended motion for summary judgment. By order dated July 14, 1997, the court entered summary judgment with respect to the Carrara defendants but denied summary judgment with respect to the Grimm defendants. The Grimm defendants then filed a motion for reconsideration. On November 5, 1997,

the trial court vacated its July 14th order and granted summary judgment to all defendants, finding that material issues of fact remained as to whether appellees owed appellant a duty of care, but nevertheless finding that appellant had knowingly and voluntarily assumed the risk of his injuries.[4] This timely appeal followed.

¶ 5 On appeal, appellant ostensibly raises four issues, which properly constitute one issue with several sub-issues. We have re-phrased appellant's issues as follows:

> Whether the trial court abused its discretion and committed an error of law in granting summary judgment in favor of the defendants on the doctrine of assumption of the risk by:
>
> > reviewing the evidence in the light most favorable to the moving parties and resolving material issues of fact against the nonmoving parties;
> >
> > ruling that an employee is required to quit his employment when his safety is imperiled; and
> >
> > finding that appellant's assumption of the risk was voluntary under the circumstances.

Appellant's brief at 4 (paraphrased). Because we find that reasonable minds could differ as to whether appellant voluntarily assumed the risk of his injuries, and that the trial court erred when it concluded that an employee is required to quit his employment when his safety is imperiled, we reverse in part. We note first our standard and scope of review of an order granting summary judgment:

> When presented with a challenge to an order granting summary judgment, we view the record in the light most favorable to the non-moving party, resolving

---

3. While both Paul and Nancy Staub are appellants, we refer to appellant Paul Staub throughout this opinion to simplify discussion.

4. The court had originally granted summary judgment to Carrara on the ground that Carrara "had vacated the entire premises by the

day of the accident." (Trial court opinion, 11/5/97 at 5.) In the course of deciding Grimm's motion for reconsideration, however, the court decided that it had erred in granting summary judgment on that basis. (*Id.*)

all doubts as to the existence of a genuine issue of material fact against the moving party. *Ertel v. Patriot–News Company*, 544 Pa. 93, 674 A.2d 1038 (1996). Concerning questions of law, our scope of review is plenary. *Id.* We are not bound by a trial court's conclusions of law; instead, we may draw our own inferences and reach our own conclusions. *Butterfield v. Giuntoli*, 448 Pa.Super. 1, 670 A.2d 646 (1995), *appeal denied*, 546 Pa. 635, 683 A.2d 875 (1996). *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 258 (Pa.Super.1997), *appeal denied*, 555 Pa. 725, 725 A.2d 178 (1998). "The moving party has the burden of proving the nonexistence of any genuine issue of material fact." *Salazar v. Allstate Ins. Co.*, 549 Pa. 658, 661–62, 702 A.2d 1038, 1040 (1997). Our review of the record is plenary. *Keselyak v. Reach All*, 443 Pa.Super. 71, 74–76, 660 A.2d 1350, 1352 (1995).

¶ 6 Our supreme court appears to have concluded that in a negligence action, the question whether a litigant has assumed the risk is a question of law as part of the court's duty analysis, and not a matter for jury determination.[5] *Howell v. Clyde*, 533 Pa. 151, 160–64, 620 A.2d 1107, 1112–13 (1993) (plurality). *See also Struble v. Valley Forge Military Academy*, 445 Pa.Super. 224, 232, 665 A.2d 4, 8 (1995).

In *Hardy v. Southland Corp.*, 435 Pa.Super. 237, 243–45, 645 A.2d 839, 842 (1994), *appeal denied*, 539 Pa. 679, 652 A.2d 1324 (1994), this court concluded that until the supreme court adopts clearer standards, assumption of risk should be analyzed according to the lead (plurality) opinion in *Howell*. Under this "modified" form of the doctrine, assumption of risk is no longer an affirmative defense in most cases;[6] rather, it is incorporated into an analysis of whether the defendant owes a duty to the plaintiff. *Id.*; *Zinn v. Gichner Sys. Group*, 880 F.Supp. 311, 318 (M.D.Pa. 1995). "*Howell* states that the trial court is obligated to review the factual scenario and determine whether '[u]nder those facts, ... the defendant, as a matter of law, owed the plaintiff no duty of care.'" *Hardy*, 645 A.2d at 842, citing *Howell*, *supra* at 162–64, 620 A.2d at 1113.

¶ 7 This court has also held that "a plaintiff will not be precluded from recovering except where it is *beyond question* that he voluntarily and knowingly proceeded in the face of an obvious and dangerous condition and thereby must be viewed as relieving the defendant of responsibility for his injuries." *Struble*, 665 A.2d at 6, citing *Long v. Norriton Hydraulics, Inc.*, 443 Pa.Super. 532, 662 A.2d 1089 (1995), *appeal denied*, 544 Pa. 611, 674 A.2d 1074 (1996) (emphasis in *Struble*).[7]

**5.** On March 5, 1999, the supreme court granted allocatur in *Joseph v. Duquesne Light Co.*, 555 Pa. 341, 724 A.2d 347 (1999), to address, *inter alia*, the issue "[w]hether assumption of risk is a question for the jury in a negligence case, or whether it is a question of law to be decided by the trial court." *Id.*

**6.** In products liability cases, assumption of risk is still analyzed as an affirmative defense rather than as part of a 'no duty' analysis. *Hardy*, 645 A.2d at 842.

**7.** In *Long, supra*, a panel of this court opined that *a majority* of the *Howell* court agreed that the question whether a plaintiff has assumed the risk of his injuries should not be decided as a matter of law except where it is beyond question that the plaintiff voluntarily and knowingly proceeded in the face of an obvious and dangerous condition, thereby re-

lieving the defendant of responsibility for his injuries. *Long*, 662 A.2d at 1090–91. Likewise, in *Struble, supra*, a panel of this court opined that four justices concurred in affirming a trial court's determination that as a matter of law, the plaintiff voluntarily proceeded in the face of a known risk and absolved the defendant from his duty to protect against the injuries sustained. *Struble*, 665 A.2d at 6. We do not, however, read *Howell* as commanding a majority on any substantive issue.

In *Howell*, Justice, now Chief Justice, Flaherty authored the Opinion Announcing the Judgment of the Court, in which one justice joined. Two justices concurred in the result, namely, reversal of this court's order reversing the trial court's entry of an involuntary nonsuit, based on the theory of joint enterprise. *Howell, supra* at 162–64, 620 A.2d at

¶ 8 As the plurality observed in *Howell, supra*, "the court may determine that no duty exists only if reasonable minds could not disagree that the plaintiff deliberately and with awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury." *Howell, supra* at 162, 620 A.2d at 1113 (plurality). As the *Howell* court continued, "If, on the other hand, the court is not able to make this determination and a nonsuit is denied, then the case would proceed and would be submitted to the jury on a comparative negligence theory." *Id.* The *Howell* court noted that "[u]nder this approach ... assumption of the risk would no longer be part of the jury's deliberations or instructions." *Id.*

¶ 9 The case before us involves defendants' motions for summary judgment, however, not a motion for compulsory nonsuit as in *Howell*. Where assumption of risk is asserted as an affirmative defense, a defendant is required to establish that there is no genuine issue of material fact that plaintiff assumed the risk.[8] Under *Howell, supra*, however, if appellant assumed the risk as a matter of law, then Carrara and Grimm owed no duty to appellant, and appellant's negligence action should not proceed to a jury because he failed to establish his *prima facie* case of negligence. In this case, the trial court indicated that summary judgment would be appropriate whether assumption of the risk were treated as part of a "no-duty" analysis or as an affirmative defense. (Trial court opinion, 11/5/97 at 15 n. 9.) Like the trial court, we will focus on the merits of the doctrine itself.

'Assumption of risk is a judicially created rule which was developed in response to the general impulse of common law courts at the beginning of this period

---

1113. Furthermore, two justices dissented. One dissenting justice opined that assumption of risk in negligence cases did not survive enactment of the Comparative Negligence Act, 42 Pa.C.S.A. § 7102. *Id.* at 162–66, 620 A.2d at 1113–15 (Nix, Chief Justice, dissenting). The other dissenting justice opined that decisions in the areas of assumption of risk and comparative negligence that do not command a clear majority continue to "muddy the waters." *Id.* at 166, 620 A.2d at 1115 (Zappala, J., dissenting). The seventh justice, Justice McDermott, did not participate in the decision of the case.

"[I]n cases which produce a majority of Justices in support of one result but only a plurality in support of the lead opinion, courts traditionally attach precedential value to the narrowest holding on which the majority necessarily agreed in order to reach the end result." *In Interest of O.A.*, 552 Pa. 666, 691 n. 6, 717 A.2d 490, 503–04 n. 6 (1998) (Castille, J., dissenting), citing Mark Alan Thurmon, Note, *When the Court Divides: Reconsidering the Precedential Value of Supreme Court Plurality Decisions*, 42 Duke L.J. 419, 449 (1992). *See also Commonwealth v. Thomas*, 510 Pa. 106, 113 n. 10, 507 A.2d 57, 60 n. 10 (1986) (discussing the "narrowest grounds" test). In *Howell*, because the two justices concurring in the result employed the theory of joint enterprise to reach that result, the narrowest holding on which the majority necessarily agreed was that the trial court properly entered an involuntary nonsuit.

8. For summary judgment purposes, affirmative defenses are generally decided under Pa. R.Civ.P. 1035.2(1), where it is the moving party's burden to establish the defense as a matter of law. Under *Howell* and *Hardy*, however, assumption of risk is now considered part of a "no-duty" analysis. As such, the doctrine now falls under the second type of summary judgment motion, described in Pa.R.Civ.P. 1035.2(2). Under Rule 1035.2(2), a party may obtain summary judgment by pointing to the *adverse party's lack of evidence* on an essential element of the claim. (Rule 1035.1, Explanatory Comment—1996, citing *Godlewski v. Pars Mfg. Co.*, 408 Pa.Super. 425, 597 A.2d 106 (1991).) One of the essential elements of a negligence claim is that the defendant owes the plaintiff a duty of care. Under Rule 1035.2(2), the defendant's method for pointing to a lack of evidence on the duty issue is to show that the plaintiff assumed the risk as a matter of law. This process will entail gathering and presenting evidence on the plaintiff's behavior, and attempting to convince the court that the plaintiff knew the risk and proceeded to encounter it in a manner showing a willingness to accept the risk. Thus, for all practical purposes, the process for showing "no-duty" assumption of the risk under Rule 1035.2(2) is indistinguishable from showing assumption of the risk as an affirmative defense under Rule 1035.2(1).

[the industrial revolution] to insulate the employer as much as possible from bearing the "human overhead" which is an inevitable part of the cost—to someone—of the doing of industrialized business.'

*Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 606, 437 A.2d 1198, 1206 (1981) (plurality), quoting *Tiller v. Atlantic Coast Line R. Co.*, 318 U.S. 54, 58–59, 63 S.Ct. 444, 87 L.Ed. 610 (1943). The doctrine had its origins in the individualism of the common law. While the common law protected individuals from external violence and coercion, it did not protect them from the consequences of their own behavior. *Rutter, supra* at 606, 437 A.2d at 1206, citing Bohlen, *Voluntary Assumption of Risk*, 20 Harv.L.Rev. 14 (1906). As a result, the doctrine has historically operated as a complete bar to a plaintiff's recovery.

¶ 10 The doctrine has, however, fallen into disfavor, as evidenced by our supreme court's two recent attempts to abolish or limit it. *See Howell, supra* and *Rutter, supra*. In fact, the prominent scholars drafting the Second Restatement of Torts hotly debated whether to include the doctrine in the Restatement at all. Jean W. Sexton, *Tort Law—Assumption of Risk and Pennsylvania's Comparative Negligence Statute—Howell v. Clyde*, 533 Pa. 151, 620 A.2d 1107 (1993), 67 Temple L.Rev. 903, 919 n. 116 (1994), quoting Fleming James, Jr., *Assumption of Risk: Unhappy Reincarnation*, 78 Yale L.J. 185, 188 (1968).

¶ 11 As Ms. Sexton notes, this debate occurred even before numerous jurisdictions including Pennsylvania adopted comparative negligence statutes, which apportion loss between a negligent plaintiff and a negligent defendant. Sexton, *supra* at 909; 919 n. 116. "Courts and scholars differ as to whether assumption of risk can exist in a comparative negligence jurisdic-

tion." *Id.* at 909. *See also, Howell, supra* at 162, 620 A.2d at 1112 (plurality) (policy underlying the Comparative Negligence Act is inimical to the policy underlying assumption of risk); *id.* at 1114 (Nix, J., dissenting) (same); *Carrender v. Fitterer*, 503 Pa. 178, 189–90, 469 A.2d 120, 126 (1983) (Flaherty, J., concurring, joined by Larsen, J.) (retention of an assumption of risk analysis in cases governed by our comparative negligence statute would be inimical to the purposes of a comparative negligence system); *Handschuh v. Albert Development*, 393 Pa.Super. 444, 451–52, 574 A.2d 693, 697 (1990) (Beck, J., concurring) (with the enactment of the Comparative Negligence Act, the legislature intended to abolish assumption of risk in cases where plaintiff's conduct can be characterized as negligent). *See generally* 57A Am. Jur.2d *Negligence* § 806.

¶ 12 Additionally, both opponents and proponents of the doctrine have acknowledged the difficulty of its application, especially in a negligence context. *See Howell, supra* at 156–58, 620 A.2d at 1108, 1110 (the complexity of the analysis in assumption of risk cases makes it extremely difficult to instruct juries; analysis also overlaps with duty and with ordinary negligence law), citing *Rutter, supra*; *Carrender, supra*; *Handschuh*, 574 A.2d at 697 (Beck, J., concurring); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 68 at 480 (5th ed.1984) (assumption of risk has been a subject of much controversy, and has been surrounded by much confusion). Nevertheless, until our supreme court or our legislature abrogates assumption of risk in negligence cases, the doctrine remains viable in Pennsylvania after *Howell, supra. Zinn*, 880 F.Supp. at 317.

■ ¶ 13 The Restatement (Second) of Torts sets forth the doctrine of assumption of risk at §§ 496A–496G.[9] As previ-

---

9. The Restatement distinguishes between express and implied assumption of risk and further distinguishes among three separate

types of implied assumption of risk. Restatement (Second) of Torts §§ 496A, 496B, 496C. A plurality of our supreme court in *Howell,*

ously noted, assumption of risk is established as a matter of law "only where it is beyond question that the plaintiff voluntarily and knowingly proceeded in the face of an obvious and dangerous condition." *Barrett v. Fredavid Builders, Inc.*, 454 Pa.Super. 162, 166–68, 685 A.2d 129, 131 (1996), *appeal denied*, 548 Pa. 653, 698 A.2d 63 (1997), citing *Struble, supra* and *Long, supra*. Voluntariness is established only when the circumstances manifest a willingness to accept the risk. *Handschuh*, 574 A.2d at 695. Mere contributory negligence does not establish assumption of the risk. *Fish v. Gosnell*, 316 Pa.Super. 565, 577–79, 463 A.2d 1042, 1049 (1983). Rather, a plaintiff has assumed the risk where he has gone so far as to abandon his right to complain and has absolved the defendant from taking any responsibility for the plaintiff's injuries. *Id.*; *Struble*, 665 A.2d at 6. In order to prevail on assumption of risk, the defendant must establish both the 'awareness of the risk' prong and the 'voluntariness' prong. *Jara v. Rexworks, Inc.*, 718 A.2d 788, 795 (Pa.Super.1998), *appeal denied*, 558 Pa. 620, 737 A.2d 743 (1999); *Barrett*, 685 A.2d at 131.

¶ 14 As the *Fish* court opined, in implied assumption of risk cases, "[a] particularly difficult element of the defense is in defining 'circumstances that manifest a willingness to accept' the risk." *Fish*, 463 A.2d at 1048, quoting Restatement (Second) of Torts § 496C. "To imply such waiver from conduct and circumstances alone can be a source of 'misapprehension and confusion' and 'frequent misapplication.'" *Fish*, 463

A.2d at 1049, quoting W. Prosser, Law of Torts, at 445 (4th ed.1971). *Accord Handschuh*, 574 A.2d at 695.

¶ 15 As a result of this difficulty, "this Court announced, even before comparative negligence, that it would take a 'restrictive attitude' toward the circumstances from which the assumption of risk defense might be implied." *Fish*, 463 A.2d at 1049, citing *Fahringer v. Rinehimer*, 283 Pa.Super. 93, 98–100, 423 A.2d 731, 734 (1980):

> Preliminary and deliberate conduct done with an awareness of the specific risks inherent in the activity is a proper basis for implying assumption of risk. *Conduct close in time and place to the accident, on the other hand, while it may contain an element of voluntary risk-taking, does not demonstrate a deliberate abandonment of the right to complain, but rather is better judged by its reasonableness, that is, by negligence principles.*

*Fish*, 463 A.2d at 1049 (emphasis added), citing *Meistrich v. Casino Arena Attractions, Inc.*, 31 N.J. 44, 155 A.2d 90 (1959) (other citation omitted). *Accord Howell, supra* at n. 7, 620 A.2d at 1110 n. 7 (plurality) (quoting *Fish* with approval).

¶ 16 Based on the foregoing analysis, we conclude that in a negligence context, where an employee is required to encounter a risk in order to perform his job, reasonable minds could disagree as to whether the employee "deliberately and with awareness of specific risks inherent in the activity nonetheless engaged in the

*supra*, adopted the Restatement analysis as to express assumption of risk and as to implied assumption of risk where plaintiff's conduct is reasonable. *Howell, supra* at 159–62, 620 A.2d at 1111–12 (plurality). In contrast, the *Howell* court abrogated implied assumption of risk where plaintiff's conduct in assuming the risk is unreasonable because in those cases, the doctrine plainly conflicted with the legislative policy underlying the Comparative Negligence Act. *Id.* at 161–62, 620 A.2d at 1112.

The *Howell* analysis thus retains assumption of risk as a defense in cases where plain-

tiff's behavior in encountering the risk is reasonable, but abolishes it in cases where plaintiff's behavior is unreasonable. *Howell, supra* at 161–62, 620 A.2d at 1112 (plurality). As a result, plaintiff will argue to the court that his conduct was *un*reasonable, so that the case will go to the jury under a comparative negligence theory, while the defendant will argue that plaintiff's behavior was *reasonable*, thereby absolving defendant of its duty. *See* Sexton, *supra* at 921–922; Keeton, *supra*, § 68 at 497–498. (Presumably, these arguments will reverse if the case goes to the jury.) Sexton, *supra* at 922.

activity that produced the injury." *Howell*, *supra* at 162–64, 620 A.2d at 1113 (plurality). Thus the employee's "conduct is better judged by its reasonableness, that is, by negligence principles." *Fish*, 463 A.2d at 1049. A trial court should not, therefore, decide the issue as one of duty or lack thereof; instead, the issue should go to the jury as one of comparative negligence. As noted in the comment to the Restatement discussing implied assumption of risk, "Since interpretation of conduct is seldom so clearly indicated that reasonable men could not differ as to the conclusion, it is ordinarily a question for the jury whether what the plaintiff has done is a manifestation of willingness to accept the risk." Restatement (Second) of Torts § 496C cmt. h (1965).

¶ 17 We find support for our conclusion in an opinion filed by a recent panel of this court, holding that in a products liability context, assumption of risk is no longer available as an affirmative defense in an employment situation because the employee cannot voluntarily assume the risk where in doing his job he is required to use equipment furnished by his employer. *Jara*, 718 A.2d at 795.[10] We note also the apparent reluctance of other panels of this court to imply assumption of risk in cases involving work-related injuries. *See Barrett*, 685 A.2d at 131–32 (negligence action) (trial court improperly granted summary judgment based on assumption of risk where plaintiff was injured while walking on stilts to install insulation and slipped on a piece of siding left behind by another subcontractor, where plaintiff attempted to clear a path in which to work before he began, because plaintiff was not subjectively aware of the risk); *Long*, 662 A.2d at 1089 (products liability action) (trial court improperly granted summary judgment

based on assumption of risk where plaintiff was injured when he slipped on hydraulic fluid while trying to dodge a falling hydraulic lift under which he was working; question existed as to whether plaintiff voluntarily assumed the risk when he used the lift because he needed it to perform his job; question also existed as to whether the risk of the lift falling under the particular circumstances was known and obvious); *Handschuh*, 574 A.2d at 694–95 (negligence action) (trial court properly refused to charge the jury on assumption of risk where decedent kept working in trench that ultimately caved in despite his awareness of its delicate nature and prior minor erosions that occurred while he was working).

¶ 18 We also note that none of the recent cases decided by the supreme court addressing assumption of risk involved employees who encountered a risk during the course of their employment; rather, the cases all involved plaintiffs engaged in non-employment related activities. *See Howell*, *supra* (plurality) (plaintiff assumed the risk where he was injured while participating in lighting a cannon to set off fireworks); *Carrender*, *supra* (plaintiff assumed the risk where she was injured when she slipped on a patch of ice next to her car in parking lot but where spaces free of ice were available in parking lot); *Rutter*, *supra* (plurality) (a jury question existed as to whether plaintiff voluntarily assumed the risk where he was injured during mandatory "jungle football" practice for high school football team).

¶ 19 Additionally, we find the cases cited by appellees distinguishable for various reasons. For example, neither *Hill v. Richards*, 406 Pa. 452, 178 A.2d 705 (1962), nor *Kopp v. Noonan, Inc.*, 385 Pa. 460, 123 A.2d 429 (1956), involved employees oper-

---

10. We recognize the distinctions between *Jara* and this case. First, this case involves the propriety of the trial court's granting a motion for summary judgment, not the propriety of the court's granting plaintiff a j.n.o.v. as to liability and a new trial as to damages only. Second, comparative negligence is not available as a defense in strict liability cases as it is in negligence cases such as this one. *Jara*, 718 A.2d at 793. Thus, the court and the jury in a products liability case are faced with the Draconian choice between granting a plaintiff either full recovery or no recovery, regardless of the parties' comparative fault.

ating within the scope of their employment when they were injured. Furthermore, *Mentzer v. Ognibene*, 408 Pa.Super. 578, 597 A.2d 604 (1991) (plurality), *appeal denied*, 530 Pa. 660, 609 A.2d 168 (1992), is not an assumption of risk case.

¶ 20 In *Malinder v. Jenkins Elevator Machine Co.*, 371 Pa.Super. 414, 538 A.2d 509 (1988) (*en banc*), also cited by appellees, this court addressed the viability of assumption of risk as a defense in a negligence case after enactment of the Comparative Negligence Act, 42 Pa.C.S.A. § 7102. Following *Carrender, supra*, the *Malinder* court found that *Carrender* factually and procedurally controlled the case before it and held that assumption of risk survived enactment of the comparative negligence statute. *Malinder*, 538 A.2d at 516. The *Malinder* court did not address the issue whether an employee could voluntarily assume a risk of his employment even though Malinder was injured while so employed.

■ ¶ 21 It is true that *Zinn, supra*, a federal district court case applying Pennsylvania law, found that plaintiff assumed the risk of slipping on a slippery floor and falling into a six-foot-deep opening nearby when he continued to work after the landowner refused to remedy the dangerous situation. *Zinn*, 880 F.Supp. at 317–18. Nevertheless, United States District Court opinions construing Pennsylvania law are not binding on this court. *See Clay v. Advanced Computer Applications, Inc.*, 370 Pa.Super. 497, 506, 536 A.2d 1375, 1380 n. 5 (1988) (a federal court's interpretation of state law does not bind a state court), *reversed in part on other grounds*, 522 Pa. 86, 559 A.2d 917 (1989). Additionally, the *Zinn* court acknowledged it was attempting to predict how this state's highest court would resolve the assumption of risk issue after what the *Zinn* court described as the fragmented opinion in *Howell, supra*. *Zinn*, 880 F.Supp. at 317. The *Zinn* court also decided the issue prior to this court's decision in *Jara, supra*, a case in

which our supreme court recently denied allocatur. Thus, we decline to follow *Zinn*.

■ ¶ 22 Nevertheless, appellees argue that appellant failed to introduce evidence of coercion; therefore, no material issue of fact exists as to the voluntariness of appellant's behavior. (Carrara's brief at 9–14; Grimm's brief at 40–44.) We do not agree, however, that a plaintiff/employee is required to introduce evidence of coercion to establish the involuntariness of his behavior. Under the Restatement:

§ 496E. **Necessity of Voluntary Assumption**

(1) A plaintiff does not assume a risk of harm unless he voluntarily accepts the risk.

(2) The plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to

. . . .

(b) exercise or protect a right or privilege of which the defendant has no right to deprive him.

Restatement (Second) of Torts § 496E (1965). According to the comment to this section, the assumption of risk is not voluntary where a defendant has an independent duty to the plaintiff and his breach of that duty compels the plaintiff to encounter the particular risk in order to protect a right or privilege of which the defendant has no privilege to deprive him. Restatement (Second) of Torts § 496E cmt. c (1965). "The existence of an alternative course of conduct which would avert the harm, or protect the right or privilege, does not make the plaintiff's choice voluntary, if the alternative is one which he can not reasonably be required to accept." *Id.*, cited with approval in *Rutter, supra* at 604–06, 437 A.2d at 1205 (plurality). *See also Jara*, 718 A.2d at 795. We therefore do not agree with appellees that the Restatement requires a plaintiff in an em-

ployment context to show economic coercion as a basis for refuting voluntariness.

¶ 23 In this case, the trial court found that material issues of fact remained to be resolved before it could determine whether appellees owed appellant a duty of care under the Restatement. *See* discussion *infra*. Because the court was unable to resolve the duty issue in favor of appellees, it is for the jury to decide whether appellant's conduct in performing his job despite his awareness of the roof openings was reasonable or unreasonable. In making its determination, a jury should consider all the facts and circumstances of the case, including appellant's alternatives, if any.[11]

¶ 24 As a result, we reject outright the trial court's conclusion that appellant was required to quit his job rather than to proceed in the face of an obvious danger. (Trial court opinion, 11/5/97 at 13, citing *Fitzgerald v. Pennsylvania R.R.*, 121 Pa.Super. 461, 184 A. 299 (1936).) Instead, we find that this premise has no place in the modern law of Pennsylvania in view of workers' compensation and state and federal safety regulations requiring safe work places for workers. *See* Re-

statement (Second) of Torts § 496F cmt. d (1965) ("A factory act, requiring precautions to insure safe working conditions, may be found to be intended to protect workmen against the economic pressure which might force them into unsafe employment; and if so ... the defense [of assumption of risk] would not be permitted[ ]"). *See also* Keeton, *supra*, § 68 at 491–492 (only vestiges of old American law, refusing to recognize the economic pressure on workers, remains in fragments but has been largely superseded by workers' compensation acts or other statutes or decisions).[12] Comparative negligence would, however, still be available as a defense in such situations; therefore workers cannot abdicate responsibility for their own safety.

¶ 25 We therefore conclude that in the employment context, reasonable minds could differ as to whether a plaintiff/employee "deliberately and with awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury." *Howell*, *supra* at 162–64, 620 A.2d at 1113. As a result, we find that the trial court in this case erred in not

---

11. We recognize that other jurisdictions have adopted a similar analysis, calling it "the modern employee's dilemma." *ADM Partnership v. Martin*, 348 Md. 84, 95 n. 3, 702 A.2d 730, 736 n. 3 (1997). This theory advances the view that an employee does not voluntarily or unreasonably assume the risk of a danger during the course of employment because 'the competitiveness and pragmatism' of the real world workplace compel employees to either perform risky tasks or suffer various adverse employment consequences, ranging from termination to more subtle sanctions. *Varilek v. Mitchell Eng'g Co.*, 200 Ill.App.3d 649, 146 Ill.Dec. 402, 558 N.E.2d 365 (1990). Courts that have subscribed to this view have held 'that an injured worker does not have to put in evidence that he would have been fired if he had not done his job in order to show that his decision ... was not voluntary under the doctrine of assumption of risk.' *Varilek*, 146 Ill.Dec. at 413, 558 N.E.2d at 376. *Id.* (declining to address the validity of the theory). *See also Cremeans v. Willmar Henderson Mfg. Co.*, 57 Ohio St.3d 145, 148–

49, 566 N.E.2d 1203, 1207 (1991) (plurality) (" 'The decision to abolish assumption of risk in the employment setting is grounded in economic reality and a sense of humanity consistent with present social policy[ ]' "), quoting Comment, *Employees' Assumption of Risk: Real or Illusory Choice?*, 52 Tenn.L.Rev. 35, 65 (1984); *Kitchens v. Winter Company Builders, Inc.*, 161 Ga.App. 701, 702–04, 289 S.E.2d 807, 809 (1982) (two judges concurring) (any construction worker as a servant and employee has a certain amount of his freedom of choice restricted by the circumstances under which he works and the coercion of seeking to remain employed); *Suter v. San Angelo Foundry & Mach. Co.*, 81 N.J. 150, 202–04, 406 A.2d 140, 167 (1979) (an employee engaged in his assigned task on a plant machine has no meaningful choice), *superseded by statute on other grounds*.

12. We recognize the irony implicit in partially abrogating a doctrine for the very reason the courts initially created it.

submitting the case to the jury on a comparative negligence theory. *Id.*

¶ 26 Carrara also argues, however, that even if assumption of risk does not entitle Carrara and Grimm to summary judgment, we should affirm the trial court's entry of summary judgment because neither Carrara nor Grimm owed appellant a duty of care. (Carrara's brief at 40, citing *Fleetway Leasing Co. v. Wright*, 697 A.2d 1000, 1002 n. 2 (Pa.Super.1997) (this court may affirm a decision of the trial court for reasons other than those relied on by the trial court as long as the result is correct).) According to Carrara, relinquishing control of the roof deck to Barnhart absolved both Grimm and Carrara of any duty to Barnhart's employees for obvious and known dangers. (Carrara's brief at 39.)

¶ 27 We decline to address this argument as it pertains to Grimm because Grimm has not argued the issue on appeal to this court. Instead, on appeal, Grimm merely joined in and adopted any brief filed or to be filed on behalf of Carrara. (Grimm's brief on reargument at 12, citing Pa.R.App.P. 2137.) After this court granted reargument, Grimm joined in and adopted only pages 6–14 of Carrara's supplemental brief, addressing assumption of risk. (Grimm's supplemental brief on reargument at 7 n. 3, citing Pa.R.App.P. 2137.)

¶ 28 We are unable to determine from the state of this record, however, whether Grimm, like Carrara, is merely an independent contractor or whether Grimm's relationship with Toy Factory requires a different analysis. *See Weiser v. Bethlehem Steel Corp.*, 353 Pa.Super. 10, 16–18, 508 A.2d 1241, 1245 (1986) ("In order to ascertain the extent of Bethlehem Steel's legal duty to Weiser, we must first establish the relationship between the two[ ]"). Grimm may also or instead be the possessor of land, the employer of an independent contractor, and/or the general contractor. Depending on its status, Grimm may be entitled to immunities to which Carrara is not entitled or subject to liabilities to which Carrara is not exposed.

¶ 29 The trial court did not determine Grimm's status, concluding only that *if* Grimm is found to be a possessor of land, then § 343A of the Restatement (Second) of Torts provides the relevant standard. (Trial court opinion, 11/5/97 at 9.) That section provides in pertinent part that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*" Restatement (Second) of Torts § 343A(1) (1965) (emphasis added). Furthermore, according to the trial court, a material issue of fact existed as to whether Grimm should have anticipated the harm despite its obviousness. (Trial court opinion, 11/5/97 at 9.) Nevertheless, because Grimm has not adequately argued the duty issue to this court, and because Carrara's status vis-a-vis appellant may differ from Grimm's, we find that the duty issue as it pertains to Grimm is not ripe for our review.

¶ 30 We are likewise unable to resolve on appeal some of the factual issues necessary to determining the extent of Carrara's duty to appellant under §§ 384 and 385 of the Restatement, applicable to one who on behalf of a possessor of land creates a dangerous condition on the land. We therefore find no error in the trial court's refusal to grant Carrara's motion for summary judgment on this basis. As both the trial court and Carrara correctly note, "A subcontractor on a construction job owes to employees of other subcontractors, on the same site, the care due a business visitor from a possessor [of] land." *McKenzie v. Cost Bros.*, 487 Pa. 303, 307–08, 409 A.2d 362, 364 (1979), citing *Stringert v. Lastik Products Co.*, 397 Pa. 503, 155 A.2d 625 (1959). The supreme court has expressly adopted sections 384 and 343 of the Restatement "as

being applicable in such situations." *McKenzie, supra* at 307–08, 409 A.2d at 364. As noted *supra,* a possessor of land, and therefore an independent contractor, may be liable even for known or obvious dangers if the possessor should anticipate the harm despite such knowledge or obviousness. Restatement (Second) of Torts § 343A(1).

¶ 31 Section 384 and, through it, § 343A apply to Carrara, however, only if the work was still in its charge. Restatement (Second) of Torts § 384; *Weiser,* 508 A.2d at 1245 (under Pennsylvania law, one who constructs a building or creates a condition on behalf of a possessor of land has the same liability as a possessor of land for physical harm caused to others by the dangerous character of the building or condition while it is in his control).

¶ 32 In contrast, if the work was no longer in Carrara's control because "the possessor" accepted the work, then § 385 applies. That section provides that one who on behalf of a possessor of land erects a dangerous structure or creates any other dangerous condition on the land is subject to liability to others for physical harm caused by the dangerous character of the structure or condition after the possessor accepts his work under the rules used to determine the liability of one who makes a chattel for the use of others. Restatement (Second) of Torts § 385; *Prost v. Caldwell Store, Inc.,* 409 Pa. 421, 428–30, 187 A.2d 273, 277 (1963).

¶ 33 The rules applicable to makers of chattels, however, differ from the rules applicable to possessors of land. *See* Restatement (Second) of Torts §§ 394–398, 403–404, applicable to those to whom § 385 applies. *Id.* at § 385 cmt. (a). Thus, in order to determine the extent of Carrara's duty, the jury must resolve the factual issue whether Carrara "was in control of the work" or whether the work had been accepted by the "possessor."

¶ 34 We also agree with the trial court that a jury must resolve other issues of material fact relevant to Carrara. For example, while Carrara admitted responsibility for cutting the holes in the roof, Carrara employees testified during their depositions that Carrara only agreed to cut the holes after Karl Kenyon promised that Grimm would cover or otherwise protect the holes. (R.R. at 254a–256a, 258a, 264a–266a, 268a–269a.) Mr. Kenyon, on the other hand, testified that he did not discuss with anyone who would be responsible for covering the holes. (*Id.* at 168a, 175a–176a.) Thus, a material issue of fact exists as to whether Carrara knew or had reason to know that its work made the roof dangerous, or whether Grimm created the dangerous condition when it did not cover the holes as it allegedly promised to do. Restatement (Second) of Torts, §§ 385, 403. A material issue of fact also exists as to whether Carrara negligently cut the holes for purposes of §§ 385 and 404, based on the same conflicting testimony. As a result, we find no error in the trial court's determination that Carrara was not entitled to summary judgment on this basis.

¶ 35 For all of the foregoing reasons, we affirm trial court's denial of summary judgment as to appellees' duty, and reverse the trial court's entry of summary judgment as to assumption of risk.

¶ 36 Affirmed in part, reversed in part, and remanded. Jurisdiction relinquished.