J. A16021/17

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| JASON BEAM AND | : | IN THE SUPERIOR COURT OF |
| KRISTIE BEAM, HIS WIFE | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| THIELE MANUFACTURING, LLC, | : | |
| FORMERLY KNOWN AS THIELE, INC., | : | |
| FORMERLY KNOWN AS | : | |
| TYT HOLDING, INC. | : | No. 1374 WDA 2016 |
| | : | |
| APPEAL OF: JASON BEAM | : | |

Appeal from the Judgment Entered September 9, 2016,
in the Court of Common Pleas of Somerset County
Civil Division at No. 51041 Civil 2008

| | | |
|---|---|---|
| JASON BEAM AND | : | IN THE SUPERIOR COURT OF |
| KRISTIE BEAM, HIS WIFE | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| THIELE MANUFACTURING, LLC, | : | |
| FORMERLY KNOWN AS THIELE, INC., | : | |
| FORMERLY KNOWN AS | : | |
| TYT HOLDING, INC., | : | No. 1464 WDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Judgment Entered September 9, 2016,
in the Court of Common Pleas of Somerset County
Civil Division at No. 51041 Civil 2008

BEFORE:  STABILE, J., FORD ELLIOTT, P.J.E., AND STRASSBURGER, J.*

---

* Retired Senior Judge assigned to the Superior Court.

J. A16021/17

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          FILED MAY 2, 2018

Plaintiffs, Jason and Kristie Beam (hereinafter, collectively "plaintiffs"[1]) appeal from the September 9, 2016 judgment entered by the Court of Common Pleas of Somerset County. Defendant, Thiele Manufacturing, LLC (hereinafter, "defendant"), cross-appeals from the judgment.[2] After careful review, we affirm the September 9, 2016 judgment entered by the trial court.

A previous panel of this court provided the following recitation of the facts of this case:

> The instant matter arises out of an accident which occurred on December 12, 2006[,] in which [plaintiff] was injured while working in the course and scope of his employment with American Roofing, Inc. ([hereinafter,] "American Roofing") after falling through a fiberglass skylight on the roof of a building owned by [defendant. Defendant] is a Pennsylvania corporation engaged in manufacturing dump trucks and has no expertise in roofing. On October 17, 2006, [defendant] and American Roofing entered into a construction contract where American Roofing would perform work and replace existing skylights on the roof of a building owned by [defendant]. At all

---

[1] For clarity, we will refer to Mr. Beam as "plaintiff" throughout this memorandum.

[2] In its notice of appeal, defendant stated that it was appealing from the trial court's August 18, 2016 order denying defendant's motion for post-trial relief. "[S]uch orders are not appealable until they are reduced to judgment. Jones v. Rivera, 866 A.2d 1148, 1149 n.1 (Pa.Super. 2005). However, because judgment subsequently was entered, this appeal is properly before this Court." Fletcher-Harlee Corp. v. Szymanski, 936 A.2d 87, 91 n.5 (Pa.Super. 2007), appeal denied, 956 A.2d 435 (Pa. 2008), cert. denied, 556 U.S. 1104 (2009). The caption has been revised accordingly.

times material hereto, American Roofing was an independent contractor by virtue of the contract that it had entered into with [defendant, and plaintiff] was an employee of American Roofing. On December 12, 2006[,] at approximately 2:13 PM, while working on a skylight pursuant to the construction contract, [plaintiff] fell through one of the skylights and sustained serious injuries.

At [his] deposition, [plaintiff] testified that he was an "experienced roofer[,]"[] and when asked if he considered the subject roof to be out of the ordinary from a danger standpoint or if he considered it to be more dangerous than other roofs he had worked on in the past, [plaintiff] stated: "No. No. I'd look at them -- I knew it was a dangerous job, my job in general. So I look at them all the same, I use the same precautions. No." [Plaintiff] admitted that [defendant] did not supervise or control his work or the work of American Roofing, and further, that no one from [defendant] was present on the roof or at the worksite. To the contrary, [plaintiff] testified that American Roofing supervised his work.

Beam v. Thiele Mfg., LLC, No. 514 WDA 2013, unpublished memorandum (Pa.Super. filed February 7, 2014).

On February 28, 2013, the trial court entered an order granting defendant's motion for summary judgment and dismissing plaintiffs' complaint. Plaintiffs appealed the trial court's order to this court, and this court reversed the trial court's order and remanded for further proceedings on February 7, 2014. See id. Defendant petitioned this court for reconsideration before an en banc panel, which was denied on April 3, 2014. The Supreme Court of Pennsylvania denied defendant's petition for

allocatur on September 18, 2014.  Beam v. Thiele Mfg., LLC, 99 A.3d 923 (Pa. 2014).

Following a trial from April 18 through April 21, 2016, the jury awarded plaintiffs a total of $1,021,750 in damages; however, the jury also found plaintiff to be 45% negligent, and the damages were accordingly adjusted to $561,962.50.  See 42 Pa.C.S.A. § 7102(a).  The jury did not award any damages for pain, suffering, embarrassment, humiliation, or loss of enjoyment of life.

On April 29, 2016, plaintiffs filed a motion for post-trial relief requesting a new trial on only non-economic damages.  Defendant filed motions for post-trial relief on April 29, 2016 and May 2, 2016, requesting judgment notwithstanding the verdict (hereinafter, "JNOV").  On August 18, 2016, the trial court denied plaintiffs' and defendant's post-trial motions following oral argument.  The trial court entered judgment on September 9, 2016.  Plaintiffs filed an appeal with this court on September 14, 2016, and defendant filed a cross-appeal on September 26, 2016.  Both parties filed concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  In lieu of filing an opinion pursuant to Pa.R.A.P. 1925(a), the trial court referred to its rulings from the bench at the conclusion of oral argument on post-trial motions on August 18, 2016.

Plaintiffs raise the following issue for our review:

> Whether the honorable trial court erred in denying [plaintiffs'] motion for a new trial and JNOV where

the jury awarded substantial sums for medical bills, wage loss and consortiom [sic], but zero for physical pain and mental suffering.

Plaintiffs' brief at 4 (capitalization omitted).

Defendant raises the following issues for our review on cross-appeal:

I.      Whether this Court should enter a judgment as a matter of law in favor of [defendant] and against [plaintiffs] when the law in Pennsylvania is well-settled that premises owners, like [defendant], are generally not liable for accidents arising from the work entrusted to an independent contractor, like [plaintiff's] employer, American Roofing, and [plaintiffs] failed to prove that [defendant] is liable under the narrow exception contained in the "peculiar risk doctrine."

II.     To the extent that this Court does not grant judgment in favor of [defendant], whether this Court should order a new trial as to both liability and damages when the verdict was against the weight of the evidence and [defendant] was not permitted to put on evidence of American Roofing's negligence or [plaintiff's] assumption of the risk, and the issues of liability and damages were so intertwined as to result in an obvious compromise verdict that would have been avoided had the Trial Court granted [defendant's] motion to bifurcate the trial.

Defendant's brief at 7.

### Defendant's Appeal

To conduct a proper review of this case, we must initially address defendant's first issue and determine whether it is entitled to judgment as a matter of law on the grounds of the peculiar risk doctrine. As noted above,

a previous panel of this court reversed the order of the trial court granting defendant's motion for summary judgment. In its memorandum, the panel concluded that the trial court "erred as a matter of law" when it found that a peculiar risk did not exist because the risk was foreseeable to all parties. *Beam*, No. 514 WDA 2013 at *21 (emphasis in original).

During the first appeal, as noted above, we held that a material issue of fact existed "as to the foreseeability of the risk inherent in this saw-tooth roof to [defendant] when it contracted with American Roofing." *Beam*, No. 514 WDA 2013 at *19, citing *Gutteridge v. A.P. Green Servs., Inc.*, 804 A.2d 643, 657 (Pa.Super. 2002), appeal denied, 829 A.2d 1158 (Pa. 2003). We, therefore, found that the trial court committed an error of law when it granted defendant's motion for summary judgment. *Beam*, No. 514 WDA 2013 at *21. Accordingly, we reversed the trial court and remanded so that a jury could determine the factual issues regarding peculiar risk.

The jury on remand determined that plaintiff encountered a peculiar risk while working on defendant's roof, and that the risk was foreseeable to defendant at the time it contracted with American Roofing. (See jury verdict slip at 1-2.) The case returns to this court with defendant requesting that we remand to the trial court with instructions to enter a judgment as a matter of law in favor of defendant and against plaintiffs because, according to defendant, plaintiffs failed to establish any liability under the peculiar risk doctrine. (See defendant's brief at 18.)

Following trial, defendant requests that we find that it is insulated from liability as a matter of law. Plaintiffs contend that we are precluded from examining defendant's first issue due to the law of the case doctrine. Specifically, plaintiffs cite this court's decision earlier in this litigation in which we stated:

> Upon our review of [plaintiffs'] expert report and the deposition testimony presented to us, we believe evidence exists that could allow a fact-finder to render a verdict in favor of [plaintiff]. Sufficient evidence of record exists to support [plaintiffs'] peculiar risk theory to permit it to be presented to the fact finder.

Beam, No. 514 WDA 2013 at *20. Citing our decision in Benson v. Benson, 624 A.2d 644, 647 (Pa.Super. 1993), appeal denied, 639 A.2d 22 (Pa. 1994), plaintiffs argue that an appellate court may not reverse its previous ruling in a subsequent appeal after "it has considered and decided [the same] question submitted to it on appeal." (Plaintiffs' reply brief at 7.)

When considering the applicability of the law of the case doctrine, we are governed by the following standard:

> The law of the case doctrine is comprised of three rules:
>
> > (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges

> of coordinate jurisdiction, the transferee
> trial court may not alter the resolution of
> a legal question previously decided by
> the transferor trial court.
>
> Commonwealth v. Starr, 664 A.2d 1326, 1331
> (Pa. 1995); accord Zane v. Friends Hosp., 836
> A.2d 25, 29 (Pa. 2003).

Mariner Chestnut Partners, L.P. v. Lenfest, 152 A.3d 265, 282 (Pa.Super. 2016).

This case first came before this court following the trial court's granting of defendant's motion for summary judgment. During the first appeal, as noted above, we held that a genuine issue of material fact existed "as to the foreseeability of the risk inherent in this saw-tooth roof to [defendant] when it contracted with American Roofing." Beam, No. 514 WDA 2013 at *19, citing Gutteridge v. A.P. Green Servs., Inc., 804 A.2d 643, 657 (Pa.Super. 2002), appeal denied, 829 A.2d 1158 (Pa. 2003).

The case returns to this court with defendant contending that plaintiffs failed to establish any liability under the peculiar risk doctrine, and thus, defendant should be entitled to judgment as a matter of law. (Defendant's brief at 18.) Specifically, defendant maintains that plaintiffs failed to prove the two elements of the peculiar risk doctrine, and that defendant is entitled to JNOV. (Id. at 27.) This is not the same question that came before us following the trial court's granting of defendant's motion for summary judgment. Following summary judgment, we determined that a genuine issue of material fact existed, that necessitated sending this case to a jury.

We are now asked whether defendant is entitled to JNOV as a matter of law. The law of the case doctrine does not apply because this court never determined a legal question in the previous appeal. As such, we shall review defendant's first issue on its merits.

The standard governing JNOV is as follows:

> There are two bases upon which a [JNOV] can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, a court reviews the record and concludes that with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes the evidence was such that a verdict for the movant was beyond peradventure.

Mirizio v. Joseph, 4 A.3d 1073, 1079 (Pa.Super. 2010), appeal denied, 14 A.3d 829 (Pa. 2010), quoting Holt v. Navarro, 932 A.2d 915, 919 (Pa.Super. 2007), appeal denied, 951 A.2d 1164 (Pa. 2008).

In cases involving JNOV, we have repeatedly cautioned that:

> JNOV, however, may not be employed to invade the province of the jury. Thus, when there is a question of fact to be resolved, it is within the sole purview of the jury. JNOV should not be entered where evidence is conflicting upon a material fact. Thus, where the jury has been presented with conflicting evidence, a motion for JNOV should be denied.

Renninger v. A & R Machine Shop, 163 A.3d 988, 995 (Pa.Super. 2017), quoting Rohm & Haas Co. v. Cont'l Cas. Co., 732 A.2d 1236, 1248

(Pa.Super. 1999), affirmed, 781 A.2d 1172 (Pa. 2001) (emphasis in original).

During trial, plaintiff presented testimony from Michael Wright, P.E., C.S.P, C.P.E.[3] Mr. Wright testified that the roof in question "presented a peculiar, unique or extraordinary risk of harm if special precautions were not taken." (Notes of testimony, 4/19/16 at 24.) Mr. Wright further testified that the design of the roof was commonly used for factories built between the 1880s and World War II, and that the skylights featured on the roof were typically "raised above the working surface where the maintenance people would walk." (Id. at 25.) Following World War II, these types of roofs seemed to fall out of favor as new factories were being built. (Id. at 26.) The jury heard testimony from Mr. Wright that in his experience, he had never encountered a roof design similar to defendant's, which featured a "long, continuous strip of skylights." (Id. at 27-28.) Mr. Wright stated that skylights would typically be five to ten feet apart so that it would be possible to walk around the skylights. (Id. at 28.) On defendant's roof, Mr. Wright testified that the only way one would be able to walk around the skylights would be to "walk the length of the building, go along the edges, and then walk around." (Id.) Finally, Mr. Wright testified that the design of the roof

---

[3] Professional Engineer, Certified Safety Professional, and Certified Plant Engineer, respectively. Mr. Wright also serves as the president of Safety Through Engineering, Inc. See Beam, No. 514 WDA 2013 at *12-13.

constituted a hazard that should have been foreseeable to defendant. (Id. at 30-31.)

Defendant presented expert testimony from Irving Oppenheim, Ph.D. ("Dr. Oppenheim"). Dr. Oppenheim testified that defendant's roof did not present any peculiar, unique, or special risks. (Notes of testimony, 4/21/16 at 4-11.) Specifically, Dr. Oppenheim stated that the risk involved was a "well-known common recognizable risk," that did not constitute a peculiar risk. (Id. at 4.33.)

Defendant argues that Mr. Wright's testimony is the product of "generalized opinions and conjecture," and that his testimony "served only to confuse the jury by implying that there were facts in the record to support his bald conclusion," that working on defendant's roof constituted a peculiar risk. (Defendant's brief at 39-41.) Defendant cites Butler v. City of Pittsburgh, 537 A.2d 112, 115 (Pa.Cmwlth. 1988), appeal denied, 546 A.2d 60 (Pa. 1988),[4] in which the Commonwealth Court held that an expert's opinions "must be based upon facts in evidence." Defendant avers that the "mere ipse dixit[5] of an expert does not make up for a lack of facts in the record."

---

[4] "[W]e note that decisions rendered by the Commonwealth Court are not binding on this [c]ourt." Beaston v. Ebersole, 986 A.2d 876, 881 (Pa.Super. 2009) (en banc), citing Commonwealth v. Thomas, 814 A.2d 754, 759 n.2 (Pa.Super. 2002).

[5] Ipse dixit is defined as an unproven assertion. Black's Law Dictionary 847 (8th ed. 2004).

As noted by the trial court, defendant's argument is belied by the record. During oral argument for both parties' post-trial motions, the trial court provided an extensive summary of evidence received that supported Mr. Wright's conclusions. First, the trial court cited plaintiff's testimony that he had never been on a roof similar to defendant's before, and that he did not realize "what the roof was like" until he was actually on the roof. (Notes of testimony, 8/21/16 at 32; see also notes of testimony, 4/20/16 at 3.137-3.138.) The trial court also noted that plaintiff testified as to the unusual nature of defendant's roof in that the skylights were not set off from the remainder of the roof by any sort of raised structure. (Notes of testimony, 8/21/16 at 33; see also notes of testimony, 4/20/16 at 3.143.) The trial court then cited testimony from Sean Regan and Walter Delozier, two employees of American Roofing, both of whom testified that they had never encountered a roof similar to defendant's. (Notes of testimony, 8/21/16 at 33; see also notes of testimony, 4/18/16 at 1.81, 1.118, 1.124, 1.130.)

The trial court also cited testimony from American Roofing's estimator, Randall Helsel, who testified that he incorporated additional costs for labor into the bid to defendant in order to account for the sensitive nature of the job. (Notes of testimony, 8/21/16 at 34; see also notes of testimony, 4/18/16 at 1.157, 1.162-1.163.) Finally, the trial court summarized testimony from defendant's former president and CEO, Joseph Romano.

Mr. Romano testified that he was uncomfortable on the roof and he further acknowledged that defendant was having some of the skylights removed and eliminated in order to "make it safer for [defendant's] maintenance people to work on the remaining skylights." (Notes of testimony, 8/21/16 at 35-36; see also notes of testimony, 4/19/16 at 2.26-2.27.) Accordingly, we find that Mr. Wright's opinion was based on sufficient fact of record.

In the instant appeal, the jury heard testimony from experts for both parties, who provided conflicting evidence about genuine issues of material fact. As we recently held in Renninger, JNOV cannot be used to invade the exclusive purview of the jury. See Renninger, 163 A.3d at 995. Moreover, JNOV should be denied in cases in which the jury is presented with conflicting testimony pertaining to genuine issues of material fact. See id. Accordingly, we find that with all factual inferences settled adverse to defendant, the law does not require a verdict in its favor. We agree with the trial court and further find that genuine issues of material fact were raised during trial that would prevent us from concluding that a verdict would be beyond peradventure. See Merizio, 4 A.3d at 1079. We, therefore, affirm the judgment entered by the trial court.

Alternatively, defendant requests that we grant a new trial on liability and, if applicable, damages, based on the following: (1) the trial court erred in denying defendant's motion to bifurcate the trial; (2) the trial court erred in excluding evidence of American Roofing's negligence; and (3) the trial

court erred in precluding evidence of plaintiff's assumption of the risk. (Defendant's brief at 41-49.)

## Defendant's Motion for Bifurcation

On April 13, 2016, defendant filed a motion to bifurcate the trial, which the trial court denied on April 18, 2016. The bifurcation of a trial is governed by Pennsylvania Rule of Civil Procedure 213(b), which states in relevant part: "the court, in furtherance of convenience or to avoid prejudice, may . . . on motion of any party, order a separate trial of . . . any separate issue. . . ." Pa.R.C.P. 213(b).

> Initially, we note that, "The decision whether to bifurcate is entrusted to the sound discretion of the trial court, which is in the best position to evaluate the necessity for such measures." Gallagher v. Pennsylvania Liquor Control Bd., 883 A.2d 550, 557 (Pa. 2005). Thus, the appellate court must determine if the trial court's bifurcation decision "is a reasonable exercise of its discretion in this respect." Stevenson v. Gen. Motors Corp., 521 A.2d 413, 419 (Pa. 1987). We will not find an "abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. Biese v. Biese, 979 A.2d 892, 895 (Pa.Super. 2009).

> . . . .

> Our Supreme Court has observed that "bifurcation should be carefully and cautiously applied and be utilized only in a case and at a juncture where informed judgment impels the court to conclude that application of the rule will manifestly promote convenience and/or actually avoid prejudice." Stevenson, 521 A.2d at 419 (citation omitted).

- 14 -

Castellani v. Scranton Times, L.P., 161 A.3d 285, 297 (Pa.Super. 2017), appeal denied, 174 A.3d 553 (Pa. 2017).

Defendant relies on this court's decision in Ptak v. Masontown Men's Softball League, 607 A.2d 297, 300 (Pa.Super. 1992), appeal denied, 625 A.2d 1194 (Pa. 1993), in which this court affirmed the trial court's bifurcation of the trial, noting that corroboration by physicians of the plaintiff David Ptak's injuries was not necessary to establish causation because there was no dispute as to the cause of Mr. Ptak's injuries. In the instant case, defendant avers that the jury was "influenced by the extent of [plaintiff's] injuries." (Defendant's brief at 42, 43.) Defendant further avers that this is evidenced by the fact that the jury returned a compromise verdict. (Id.)

Aside from speculation of what influenced the jury during its deliberations, defendant has not provided any evidence of record or legal argument as to how the trial court abused its discretion when it denied defendant's motion to bifurcate trial. Additionally, the trial court observed that defendant filed its motion to bifurcate just prior to trial. Based on our review of the certified record, we find that the trial court did not abuse its discretion when it denied defendant's motion to bifurcate trial.

Exclusion of Evidence of American Roofing's Negligence

Defendant next avers that the trial court erred in excluding evidence of negligence on the part of plaintiff's employer, American Roofing. Plaintiffs filed a motion in limine requesting that evidence of negligence by American

Roofing be precluded from presentation to the jury, which the trial court granted. Defendant argues that "if there was no evidence of American Roofing's negligence of record, then the jury could not have been able to find [defendant] was vicariously liable." (Defendant's brief at 44.) In other words, defendant requests that negligence be attributed to a non-party to the present litigation.

We find our supreme court's decision in *Heckendorn v. Consolidated Rail Corp.*, 465 A.2d 609 (Pa. 1983), to be the most instructive. In *Heckendorn*, the plaintiff, Fred Heckendorn, who was employed by Carnation Company (hereinafter, "Carnation"), was injured on the job by a falling bulkhead on a boxcar owned by Consolidated Rail Corporation (hereinafter, "Conrail"). *Id.* at 610. Conrail attempted to join Carnation. *Id.* Carnation filed preliminary objections that were ultimately upheld by the Supreme Court of Pennsylvania. *Id.*

In affirming Carnation's preliminary objections, our supreme court stated as follows:

> [77 P.S. § 303(b)] creates an exception to the general right to contribution from joint tortfeasors. Under that section, a third party whose negligence is responsible, in part, for an injury suffered by an employee protected by the Workmen's Compensation Act, may not, in the suit brought by the employee against him, join the employer as an additional defendant. Nor may the third party otherwise seek contribution or indemnity from the employer, even

> though the employer's own negligence may have been the primary cause of the injury.
>
> [Tsarnas v. Jones & Laughlin Steel Corp.,] 412 A.2d [1094,] 1096 [(Pa. 1980).]

Heckendorn, 465 A.2d at 611 (citations omitted).

A jury is also not permitted to consider the conduct of non-parties in a comparative negligence cause of action. In a case in which Pennsylvania's Comparative Negligence Act was applied, the United States District Court for the Eastern District of Pennsylvania stated that allowing the jury to consider "the conduct of non-parties whom the plaintiff either cannot or does not seek to hold liable would introduce virtually unmanageable complexity to the determination of negligence." Tysenn v. Johns-Manville Corp., 517 F. Supp. 1290, 1295 (E.D. Pa. 1981).

Alternatively, defendant argues that it was prejudiced because it was not permitted to present evidence and seek a jury instruction pertaining to American Roofing's "collateral negligence." (Defendant's brief at 46.) In support of this theory, defendant cites the following three cases: Mentzer v. Ognibene, 597 A.2d 604, 611 (Pa.Super 1991), appeal denied, 609 A.2d 168 (Pa. 1992); Lorah v. Luppold Roofing Co., Inc., 622 A.2d 1383, 1386 (Pa.Super. 1993); and Motter v. Meadows Ltd. Partnership, 680 A.2d 887, 890 (Pa.Super. 1990).

All three cases cited to this court's decision in Ortiz v. Ra-El Development Corp., 528 A.2d 1355 (Pa.Super. 1987), appeal

denied, 536 A.2d 1332 (Pa. 1987). In *Ortiz*, this court established the following two-prong test to determine whether a peculiar risk exists: "1) Was the risk foreseeable to the employer of the independent contractor at the time the contract was executed?; and 2) Was the risk different from the usual and ordinary risk associated with the general type of work done . . . ?" *Motter*, 680 A.2d at 890, citing *Ortiz*, 528 A.2d at 1359. This court also stated the following pertaining to the application of the *Ortiz* test:

> [T]he risk [must] be recognizable in advance and contemplated by the employer [of the independent contractor] at the time the contract was formed . . . [and that] it must not be a risk created solely by the contractor's "collateral negligence" . . . [i.e., . . .] negligence consisting wholly of the improper manner in which the contractor performs the operative details of the work.

*Edwards v. Franklin & Marshall College*, 663 A.2d 187, 190 (Pa.Super. 1995), quoting *Mentzer*, 597 A.2d at 610.

In the instant case, this court applied the *Ortiz* test to the facts of the case when considering plaintiffs' appeal of the trial court's order granting defendant's motion for summary judgment. This court determined that "a material issue of fact exists as to whether the risk presented by [defendant's] saw-tooth roof was 'different from the ordinary and usual risk associated with [repairing a roof.]'" *Beam*, No. 514 WDA 2013 at *18, citing *Gutteridge*, 804 A.2d at 657. As we have already determined, the jury found as a matter of fact that plaintiff encountered a peculiar risk while working on defendant's roof. By assigning 45% negligence to plaintiff, the

jury also determined that the risk was not created solely by American Roofing's collateral negligence. Accordingly, this issue is without merit.

## Assumption of the Risk

Finally, defendant avers that the trial court erred when it precluded evidence of plaintiff's assumption of the risk. Specifically, defendant argues that the trial court erred by not instructing the jury on plaintiff's assumption of the risk and by precluding evidence of plaintiff's assumption of the risk. (Defendant's brief at 48.) Defendant further argues that the trial court erred in its reliance on Staub v. Toy Factory, Inc., 749 A.2d 522 (Pa.Super. 2000) (en banc), averring that the court's reliance is "misplaced because it suggests that the question of assumption of the risk may still go to the jury if there is enough of a showing." (Defendant's brief at 49.)

In Staub, the plaintiff, Paul Staub, brought a cause of action after sustaining serious injuries as a result of an accident that took place in the course of Mr. Staub's employment as a roofer. Staub, 749 A.2d at 525. The trial court granted the defendants' motions for summary judgment on the grounds that Mr. Staub voluntarily assumed the risk of his injuries. Id. This court stated that,

> Assumption of the risk is established as a matter of law only where it is beyond question that the plaintiff voluntarily and knowingly proceeded in the face of an obvious and dangerous condition. Voluntariness is established only when the circumstances manifest in a willingness to accept the risk. Mere contributory negligence does not establish assumption of the risk. Rather, a plaintiff has assumed the risk where he has

> gone so far as to abandon his right to complain and has absolved the defendant from taking any responsibility for the plaintiff's injuries. In order to prevail on assumption of risk, the defendant must establish both the awareness of the risk prong and the voluntariness prong.

Id. at 529 (quotation marks and citations omitted).

In the context of assumption of the risk while in the course of one's employment, we concluded that,

> Where an employee is required to encounter a risk in order to perform his job, reasonable minds could disagree as to whether the employee "deliberately and with awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced the injury." Howell v. Clyde, 620 A.2d 1107, 1113 (Pa. 1993) (plurality). Thus, the employee's "conduct is better judged by its reasonableness, that is, by negligence principles." Fish v. Gosnell, 463 A.2d 1042, 1049 (Pa.Super. 1983). A trial court should not, therefore, decide the issue as one of duty or lack thereof; instead, the issue should go to the jury as one of comparative negligence. As noted in the comment to the Restatement [(Second) of Torts] discussing implied assumption of risk, "Since interpretation of conduct is seldom so clearly indicated that reasonable men could not differ as to the conclusion, it is ordinarily a question for the jury whether what the plaintiff has done is a manifestation of willingness to accept the risk." Restatement (Second) of Torts § 496C cmt. h (1965).

Id. at 529-530. The Staub court also noted that under such an approach, "assumption of the risk would no longer be part of the jury's deliberations or instructions." Id. at 527, quoting Howell, 620 A.2d at 1113.

In light of this court's decision in Staub, we find that the trial court did not abuse its discretion when it precluded defendant from presenting any evidence of plaintiff's assumption of the risk. We further find that the trial court did not abuse its discretion when it sent the case to the jury as a comparative negligence issue.

## Plaintiffs' Appeal

We shall now address plaintiffs' sole issue on appeal. Plaintiffs aver that the jury's failure to award damages to plaintiff for physical pain and mental suffering was against the weight of the evidence and requests that we grant a new trial limited only to damages. (Plaintiffs' brief at 13, 16.) Defendant argues that the issues of liability and damages are intertwined; therefore, a new trial on the issue of damages only is not appropriate. (Defendant's brief at 51.) The jury awarded plaintiffs $1,021,750 for past and future medical expenses, past and future lost earnings, and for loss of consortium.[6] As previously noted, the jury did not award plaintiffs any damages for past, present, and future pain and suffering, embarrassment, humiliation, and/or loss of enjoyment of life. Defendant argues that the jury reached a compromise verdict.

Our cases have stated the following pertaining to compromise verdicts:

---

[6] As noted above, due to the jury's finding that plaintiff was 45% negligent, this amount was molded to $561,962.50.

> [W]here a substantial conflict exists on the question of liability, such that a low verdict might indicate that the jury compromised the liability issue with the amount of damages awarded, it is an abuse of discretion for the lower court to grant a new trial limited to the issue of damages.

Kindermann v. Cunningham, 110 A.3d 191, 195 (Pa.Super. 2015), appeal denied, 119 A.3d 351 (Pa. 2015), quoting Gagliano v. Ditzler, 263 A.2d 319, 321 (Pa. 1970) (citation omitted). In Carlson v. Bubash, 639 A.2d 458, 460 (Pa.Super. 1994), this court held that "notwithstanding a finding of comparative negligence, when liability is contested and conflicting testimony is presented, compromise verdicts are permissible to establish an amount that the jury determined would justly compensate a plaintiff for his loss." Id., quoted by Kindermann, 110 A.3d at 194.

While a jury is permitted to reach a compromise verdict, it is not permitted to reach an inconsistent verdict. In Fischer v. Troiano, 768 A.2d 1126 (Pa.Super. 2001), the plaintiff, Stella Fischer, sustained a compression fracture to the T-11 vertebra. Id. at 1130. The jury awarded Ms. Fischer damages totaling $24,588.73 for medical expenses, but did not award any damages for pain and suffering. Id. at 1128. The jury also found Ms. Fischer to be 40% negligent. Id. Ms. Fischer filed a post-verdict motion for a new trial limited only to damages, which the trial court granted. Id. The Troianos filed an appeal to this court.

On appeal, we restated the following pertaining to pain and suffering damages:

> Tort victims must be compensated for all that they lose and all that they suffer. Where a jury awards a plaintiff his medical expenses, they make a finding that the expenses were related to the defendant's actions in injuring the plaintiff. However, by not awarding any pain and suffering, the jury also makes a finding that the plaintiff did not suffer as a result of his injuries and subsequent surgery. Such findings are inherently inconsistent.

Id. at 1129, quoting Dougherty v. McLaughlin, 637 A.2d 1017, 1019 (Pa.Super. 1994).[7] The Fischer court also noted that "a broken bone is the type of injury which human experience teaches us is accompanied by pain." Fischer, 768 A.2d at 1130.

The Fischer court also addressed whether the jury had reached a compromise verdict. Specifically, the court stated that it was beyond dispute that Ms. Fischer suffered a compression fracture of the T-11 vertebra, that she was hospitalized as a result of her injury, and that her injury required a three-month healing period. Id. at 1132. This court found that the jury,

> disregarded the trial court's instruction requiring them to compensate [Ms. Fischer] for her pain and suffering, loss of enjoyment of life and humiliation if they found the Troianos liable. Therefore, in situations such as this, when a jury awards damages for medical expenses, it must also award some damages for pain and suffering which would naturally accompany the injury.

---

[7] The jury in Dougherty awarded the plaintiff the exact amount of his medical expenses in damages, but failed to award any damages for pain and suffering. Fischer, 768 A.2d at 1129. The Dougherty jury found the plaintiff to be 44% causally negligent for his injuries. Id.

Id.

The remedy for this issue is a new trial limited only to damages.  Our more recent cases indicate that for a court to order a new trial limited only to damages, the following conditions must be met:

> "New trials may be limited to specific issues only when this procedure will be fair to both parties. Where the question of negligence or contributory negligence is not free from doubt, it is an abuse of discretion for the trial judge to grant a new trial on the issue of damages alone." Gagliano, 263 A.2d at 320; Nogowski v. Alemo-Hammad, 691 A.2d 950, 958 (Pa.Super. 1997). Specifically: a trial court may grant a new trial limited to the issue of damages only where (1) the question of liability is not intertwined with the question of damages, and (2) the issue of liability is either (a) not contested or (b) has been fairly determined so that no substantial complaint can be made with respect thereto. Gagliano, 263 A.2d at 320; see also Mirabel v. Morales, 57 A.3d 144, 152 (Pa.Super. 2012).

Kindermann, 110 A.3d at 193, quoting Banohashim v. R.S. Enters., LLC, 77 A.3d 14, 23 (Pa.Super. 2013).

Here, however, we encounter the issue of judicial estoppel.  Before trial, on April 13, 2016, defendant filed a motion to bifurcate the trial and hold a trial on liability only, before holding a trial limited to damages, if necessary.  Plaintiffs opposed defendant's motion, stating as follows:

> Nevertheless, as Your Honor is aware, under Pa.R.C.P. 213(b), 42 Pa.C.S.A., the act of [b]ifurcation should be used sparingly, carefully and cautiously, especially where issues of liability and damages are interwoven, and prejudice would result to the Plaintiff.  Piecemeal litigation is not to be encouraged.  In personal injury actions, the

- 24 -

> issues of liability and damages are generally interwoven. The evidence bearing upon the respective issues is comingled and overlapping. See Stevenson v. General Motors Corp., 521 A.2d 413 (Pa. 1987).

Plaintiffs' brief in opposition to motion to bifurcate trial, 4/16/16 at 1-2 (emphasis added). The trial court denied defendant's motion to bifurcate trial on April 18, 2016. Also in denying defendant's post-sentence motion, the trial court found that the "issues of liability and damages in the case were interwoven and the evidence bearing on these issues were commingled and overlapping[.]" (Notes of testimony, 8/18/16 at 42-43.)

To the contrary, in their reply brief filed in the instant appeal, plaintiffs made the following argument:

> In the present case, the issue of damages is not intertwined with liability. First of all, there is no dispute that the fall caused Plaintiff's injuries. This is not a "fender bender." [Plaintiff] fell 40 feet to concrete. Causation of his injuries was not an issue as it would be where the mechanics of the accident, the extent of trauma, have a bearing on whether an injury could have resulted or not.

Plaintiffs' reply brief at 24 (emphasis added).

> Under [the doctrine of judicial estoppel], "a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained." Black v. Labor Ready, Inc., 995 A.2d 875, 878 (Pa.Super. 2010) (citation omitted). Judicial estoppel "appl[ies] with equal if not greater force when a party switches positions in the same action." Ligon v. Middletown Area Sch. Dist., 584 A.2d 376, 380 (Pa.Cmwlth. 1990). The purpose of judicial estoppel is "to uphold integrity of the

- 25 -

> courts by preventing parties from abusing the judicial process by changing positions as the moment requires." Gross v. City of Pittsburgh, 686 A.2d 864, 867 (Pa.Cmwlth. 1996).

Bienert v. Bienert, 168 A.3d 248, 255 (Pa.Super. 2017) (parallel citations and footnote omitted; brackets in original).

In the instant appeal, prior to trial, plaintiffs successfully argued that the issues of liability and damages were so intertwined that bifurcating the trial would have prejudiced them. On appeal, however, plaintiffs argue the exact opposite, claiming that the issues of damages and liability are not intertwined as they seek a new trial limited to damages. This is exactly what the doctrine of judicial estoppel seeks to prevent. Accordingly, we find that plaintiffs are judicially estopped from seeking a new trial limited only to damages, and we affirm the trial court's order denying their post-trial motion.

Order and judgment affirmed.

Stabile, J. joins this Memorandum.

Strassburger, J. files a Concurring and Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/2/2018

- 26 -