J-A16038-22

2022 PA Super 127

| | | |
|---|---|---|
| THOMAS HENRY MASSARO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MCDONALD'S CORPORATION; | : | No. 1410 EDA 2021 |
| MCDONALD'S USA, LLC; JODAN | : | |
| ENTERPRISES (D/B/A AS | : | |
| MCDONALD'S); JO-DAN/MADALISSE | : | |
| LTD, LLC; JOHN D. DAWKINS, III; | : | |
| BARBARA DAWKINS; DANIELLE A. | : | |
| DAWKINS; AND THE DAWKINS | : | |
| MANAGEMENT GROUP. | : | |

Appeal from the Order Entered June 7, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  200900182

BEFORE:  McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.*

OPINION BY PELLEGRINI, J.:                        **FILED AUGUST 2, 2022**

Thomas Henry Massaro (Massaro) appeals an order of the Court of Common Pleas of Philadelphia County (trial court) dismissing his claims with prejudice for lack of legal sufficiency.  It was alleged by Massaro, a senior citizen, that he was continuously harassed and assaulted by a deranged third-party while mentoring a student in a McDonald's restaurant.  His repeated requests for help from the restaurant's staff had gone unheeded for about an hour.  The above-captioned Appellees (collectively referred to here as "McDonald's") filed a preliminary objection in the nature of a demurrer,

_____

* Retired Senior Judge assigned to the Superior Court.

arguing that they could not be held liable for Massaro's injuries as a matter of law because he had remained in the restaurant beyond the point where it was reasonable for him to do so.

The trial court sustained McDonald's preliminary objection on what appear to be two not entirely consistent grounds. The trial court first determined that McDonald's did not owe Massaro a duty of care because he had assumed the risk of a known danger in the restaurant. Next, the trial court found that, as a matter of public policy, recognizing a duty of care on the part of McDonald's would constitute an undue burden which would disincentivize its business operations. We hold that the trial court improperly dismissed the case by misconstruing the allegations, resolving disputed material facts, and misapplying the law. Accordingly, the order on review must be reversed.

**I**.

**A.**

On September 21, 2018, Massaro was assaulted by Bryant Gordon at a McDonald's restaurant in Philadelphia, Pennsylvania. In his complaint, Massaro described the encounter as follows:

> 6. As Massaro and [a] student sat at the McDonald's location at 2019 N. Broad St. early in the morning on September 21, 2018, the perpetrator, Bryant Gordon, a Black male, started making virulent and hateful statements that he hated and wanted to kill white people, directed at political figures on the television. Massaro did not know the identity of Gordon at the time of these events.

7. Although Massaro (an elderly white male) was facing away from Gordon and not engaging with him at all—instead talking to the student (a Black-Latino male)—Gordon eventually began verbally attacking Massaro because he was white.

8. The loud verbal assault lasted for approximately 1 hour, and included statements that Gordon wanted to kill white people and that he loved Hitler because he only killed white people, not Black people. Gordon repeatedly stated that he had a gun and shiv in his bag and would use them. He railed against "Euro-trash," "white motherfuckers," and "crackers" hundreds of times.

9. During this hour-long time period, a McDonald's manager (Black female), an employee who was cleaning (Black female), and a uniformed staffer (Black male) repeatedly observed and heard the situation developing as they walked around the location as part of their job duties. The employee cleaning tables was circling the restaurant and throwing out trash at a trashcan next to Massaro's table.

10. All three saw and heard Gordon's tirade against the elderly Massaro. They were repeatedly asked to address the situation, remove Gordon from the building, and/or call 911. They refused to do so. The cleaning worker indicated that she knew Gordon and was friends with him.

11. Massaro and the student specifically addressed the manager about the man's racist verbal assault and threats multiple times, to which the manager shrugged her shoulders, acted with indifference, and walked away. The staff and cleaning worker did the same when Massaro and the student asked for help. They all refused to escort Gordon out, address his conduct, call 911, warn Massaro that Gordon was known to be violent, or otherwise do anything to remove him from the premises despite the clear danger he presented.

12. [McDonald's] and their employees could (and did) easily ascertain that Mr. Massaro was an elderly and physically vulnerable man, while Gordon was much younger and in good physical shape. [Appellees] were aware there was a clear power imbalance between Gordon and Massaro, but allowed Gordon to physically menace and taunt Massaro for approximately one hour.

13. Massaro later found out that the man was known to be dangerous to McDonald's staff, and that the staff knew that the man had previously attempted to target Massaro in prior months (of which Massaro was unaware). On information and belief, Gordon actually interviewed with [McDonald's] to work at that location but was rejected because he was known to be violent. At no point did [McDonald's] warn [Massaro] about the potential harm and physical danger.

14. After continuing verbal threats, and without any provocation, the man began making as if to rush the elderly Massaro and the student, attempting to provoke and harm them. The man began bragging that he had murdered four people and could kill Massaro. He said the "first two didn't count because I told them it was coming. They arrested me on the third, but I threatened a witness and got off. The fourth one they got me for manslaughter." Gordon does have a conviction for voluntary manslaughter.

15. Massaro and the student repeatedly asked the manager, cleaning employee, and uniformed staff at McDonald's to call the police, which was inexplicably not done despite the loud threats and assaultive behavior of Gordon. The management, cleaning employee, and uniformed staff at the location did not intervene in any way, despite the toxic and obviously violently unstable lunatic threatening McDonald's customers. Again, Gordon's behavior was incredibly loud, disruptive, and impossible to not see and hear.

16. When Massaro and the student informed Gordon on multiple occasions that he was under security cameras, Gordon repeatedly said in the presence of McDonald's employees "you stupid white motherfucker, they don't care what I do, they'll say the cameras are broken." Gordon bragged about how he could do anything at McDonald's such as steal purses, snatch cell phones, or assault customers and that McDonald's would not call the police or turn over security footage. Gordon repeatedly said that the only time McDonald's would call the police was if he took money from the register.

17. Massaro and the student wanted to leave, but knew that if they left a public area with cameras they would likely be shot or attacked on the street without witnesses. Massaro knew it was safer under the cameras with other people around, rather than be outside the view of security cameras. Massaro was in shock and

disbelief that McDonald's was not doing anything to address the hate, racist death threats being made against an elderly customer.

. . . .

24. As Massaro repeatedly pointed out to the McDonald's manager and employees that Gordon was making death threats against him, Gordon then stated: **"wait til you go outside, let me show you what a death threat is, when I throw you out in the goddamn traffic . . . you heard what I said I'm going to take you outside and throw you in the fucking moving traffic."**

25. [McDonald's] did nothing to help Massaro despite Gordon physically menacing [an] elderly customer and threatening to kill him. It was obvious that McDonald's staff were familiar with Gordon.

26. Seeing that no one from McDonald's was intervening, and emboldened**, Gordon screamed at Massaro: "I'm going to bury you in that rose bush," "wait til you get outside I'm going to take that [the iPad] thing and shove it up in your ass," and "I'm going to knock you out."**

Second Amended Complaint, 2/3/2021, at ¶¶ 6-17, 24-26 (emphases added).[1]

Massaro alleged that after Gordon left the restaurant, he stepped outside to hail the police and, if possible, make a video recording of Gordon's whereabouts so that he could be apprehended. Gordon grew irate at Massaro when he saw that he was being recorded and he turned back to make yet

---

[1] Massaro had intended to introduce video and audio recordings of portions of the incident, but the trial court excluded them on the ground that they were extrinsic evidence that could not be used to support the allegations in the complaint. Although the evidence was not admitted, Massaro alleged in his complaint what the video was purported to show – that a young man made an unprovoked and racially motivated assault against Massaro, repeatedly threatening his life while restaurant employees stood idly by.

more threats against him. As Gordon neared, Massaro collapsed to the ground. He asserted in his complaint that he had been struck on the skull during the assault inside the restaurant and later lost consciousness due to panic when Gordon threatened him outside. According to Massaro, he nearly died from a heart attack due to the stress of these events. *Id.* at ¶¶ 37-42.

Moreover, Massaro alleged that his video recording had captured the comments of an off-duty McDonald's employee who remarked to responding police that Gordon had been kicked out of the restaurant on several occasions due to his violent and disruptive behavior. *See id.* at ¶¶ 43-45. Massaro himself had previously complained to the restaurant's staff about being harassed, but he specifically denied that he had knowingly lodged his complaints against Gordon in particular.

**B.**

Following the incident, Massaro filed his initial complaint, alleging that McDonald's was liable for his damages. McDonald's filed preliminary objections and Massaro then filed an amended complaint. Preliminary objections again followed, and Massaro once amended his complaint for the final time. This second amended complaint (the complaint), which is the operative pleading in this appeal, was filed on February 3, 2021.

In the complaint, Massaro included counts of negligence/gross negligence and premises liability. McDonald's filed preliminary objections to the complaint on February 23, 2021, and Massaro filed an answer, as well as

his own preliminary objections. McDonald's filed an answer to Massaro's preliminary objections. Of relevance in this appeal, the parties disputed whether the factual allegations in the complaint could establish that McDonald's owed Massaro a legal duty of care, potentially subjecting McDonald's to liability for the damages caused by the attack. McDonald's contended that they could not be held liable because Massaro had assumed the risk of being attacked in the restaurant, and Massaro's assumption of the risk eliminated McDonald's duty of care to protect him from the attack.

## C.

The trial court agreed with McDonald's, overruling Massaro's preliminary objections and sustaining McDonald's preliminary objections on the issue of legal duty. Massaro's complaint was dismissed with prejudice on June 4, 2021. A key part of this ruling was that McDonald's owed no duty of care to Massaro because he had assumed the risk of a violent assault in and around McDonald's premises:

> This Court found that [Massaro's] Complaint failed to state a claim upon which relief could be granted. This Court found that [McDonald's] did not owe a duty to [Massaro] because [he], a business invitee, was aware of the danger of the property and voluntarily remained on the property. In the Complaint [Massaro] notes the danger on the premises:
>
> > In the months of weeks prior to this incident Massaro himself had complained to [McDonald's] about ongoing heckling and harassing behavior at the McDonald's location. He met and spoke with the vice president and director of HR of [McDonald's.]

(Plaintiffs Complaint ¶ 48). On the day of the incident, [Massaro] remained on the premises despite experiencing the alleged heckling for one hour.

> The loud verbal assault lasted for approximately 1 hour, and included statements that Gordon wanted to kill white people and that he loved Hitler because he killed only white people, not Black people. Gordon repeatedly stated that he had a gun and shiv in his bag and would use them. He railed against "Euro-trash," and "white motherfuckers," and "crackers" hundreds of times.

Trial Court Opinion, 11/30/2021, at 5.

Additionally, the trial court found that a number of policy considerations justified a determination that no duty was owed to Massaro:

> First, the Court found that a relationship did exist between the parties, as [Massaro] was a business invitee on [McDonald's] premises. Second, [McDonald's] establishment has a social utility as a franchise business providing a service to the community. Third, [McDonald's] conduct did not foreseeably create an unreasonabl[e] risk of harm to [Massaro]. Rather, [Massaro] intends to hold [McDonald's] accountable for the actions of a third party. Fourth, if the court imposed a duty on [McDonald's], the law would place a heavy burden on premises owners as absolute insurers over their invitee's safety. This would require a franchisee to take unreasonable precaution to prevent all criminal acts against invitees. Fifth, public interest would not be served by judicial action that would impose a duty on a franchise restaurant, to protect against any and all harm that could occur to others. Imposing an absolute duty would result in significant costs for franchisees, who would likely choose not to open businesses in certain communities as a result of those costs. . . . Since no duty was owed, [Massaro] could not establish a *prima face* case of negligence.

*Id.* at 6.

Massaro timely appealed, and he now raises six issues for our consideration:

1. Disputes of fact may not be decided at preliminary objections and must be construed in favor of the plaintiff. Was it reversible error for the lower court to overrule . . . Massaro's preliminary objections and decide disputes of fact at the preliminary objection stage concerning assumption of risk, while also failing to admit all pled facts in favor of the plaintiff?

2. Assumption of risk requires a finding "beyond question" that the plaintiff knew of a specific danger and voluntarily assumed the risk of that specific danger. Was it reversible error for the lower court to ignore almost all the pled facts in the complaint to come to a manifestly unjust conclusion that . . . Massaro had voluntarily remained at the restaurant and assumed the risk of nearly being killed, when the pled facts the court ignored showed he was trapped and begging for help?

3. The lower court has a duty to consider and admit all pled facts and attached evidence in favor of the plaintiff at preliminary objections. Was it reversible error for the lower court to refuse to consider the objective audio-visual recordings of the attack when they were lodged with the court on a USB and attached to the complaint, recordings which directly contradicted the court's assumption of risk holding?

4. Affirmative defenses are not allowed to be decided at preliminary objections, especially where they are fact dependent. Was it reversible error for the lower court to overrule [Massaro's] preliminary objections and decide the fact-heavy affirmative defense of assumption of risk?

5. A lower court may not act as an advocate and rule at preliminary objections on a ground not raised by the defendant. Was it reversible error for the lower court to *sua sponte* and without notice decide a separate "duty" question never raised by defendants, a holding which also impermissibly (and incorrectly) decided dispute of fact in violation of the preliminary objection standard and in violation of binding precedent?

6. Before dismissing a complaint at preliminary objections, the lower court has a positive duty to provide the plaintiff with a chance to amend and abuses its discretion in most instances if amendment is not permitted. Was it reversible error for the lower court to not allow [Massaro] a chance to amend to address assumption of risk?

Appellant's Brief, at 14-15 (suggested answers omitted).

Most of the above grounds may be condensed for present purposes into a single issue which we find to be dispositive – whether Massaro pleaded sufficient facts to survive McDonald's preliminary objection that he had assumed the risk of his alleged damages.

**II.**

Massaro's primary claim is that the trial court erred in sustaining McDonald's demurrer because his factual allegations were legally insufficient to establish that McDonald's owed him a duty of care.[2]  We find merit in this claim.

---

[2] A preliminary objection in the nature of a demurrer allows a party to test the legal insufficiency of a cause of action.  **See** Pa.R.C.P. 1028(a)(4).  "A demurrer by a defendant admits all relevant facts sufficiently pleaded in the complaint and all inferences fairly deducible therefrom, but not conclusions of law or unjustified inferences."  **Krajewski v. Gusoff**, 53 A.3d 793, 802 (Pa. Super. 2012).  "The question presented in a demurrer is whether, on the facts averred, 'the law says with certainty that no recovery is possible.'"  **Bruno v. Erie Ins. Co.**, 106 A.3d 48, 56 (Pa. 2014) (quoting **MacElree v. Philadelphia Newspapers, Inc.**, 674 A.2d 1050, 1054 (Pa. 1996)).  Accordingly, a complaint should only be dismissed with prejudice where the plaintiff has failed to assert facts which may give rise to a cognizable cause of action, and an amendment of the claims would be futile.  **See Mikhail v. Penn. Org. for Women in Early Recovery**, 63 A.3d 313, 316 (Pa. Super. 2013).  "If doubt exists concerning whether the demurrer should be sustained, then 'this doubt should be resolved in favor of overruling it.'"  **Bruno**, 106 A.3d at 56 (quoting **Bilt-Rite Contractors v. Architectural Studio**, 866 A.2d 270, 274 (Pa. 2005)); **see also Juszcyszyn v. Taiwo**, 113 A.3d 853, 856 (Pa. Super. 2015) (same).  We review the trial court's ruling on a preliminary objection in the nature of a demurrer under a *de novo* standard.  **See Juszcyszyn**, 113 A.3d at 856.

**A.**

The tort of ordinary negligence has four elements: "(1) a legally recognized duty that the defendant conform to a standard of care; (2) the defendant breached that duty; (3) causation between the conduct and the resulting injury; and (4) actual damage to the plaintiff." *Traux v. Roulhac*, 126 A.3d 991, 997 (Pa. Super. 2015) (citing *Ramalingam v. Keller Williams Realty Group, Inc.,* 121 A.3d 1034, 1042 (Pa. Super. 2015)).

The duty element of negligence is akin to the duty element in a claim of premises liability, as both are defined by a reasonableness standard: "The duty owed to a business invitee is the highest duty owed to any entrant upon land. The landowner is under an affirmative duty to protect a business visitor not only against known dangers but also against those which might be discovered with reasonable care." *Charlie v. Erie Ins. Exch.,* 100 A.3d 244, 253 (Pa. Super. 2014) (quoting *Emge v. Hagosky*, 712 A.2d 315, 317 (Pa. Super. 1998)).

The Restatement (Second) of Torts specifically provides that a premises owner is under an affirmative obligation to protect invitees from the intentional harmful acts of third parties:

**§ 344. Business Premises Open to Public:  Acts of Third Persons or Animals**

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful

acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

> (a) discover that such acts are being done or are likely to be done, or

> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts, § 344; *see also **Rabutino v. Freedom State Realty Co., Inc.**, 809 A.2d 933, 939 (Pa. Super. 2002) (recognizing Pennsylvania's adoption of standards set forth in the Second Restatement of Torts).

Comment f to Section 344 of the Second Restatement explains that the duty to protect business invitees against third party conduct arises once that third party's dangerous conduct may be reasonably anticipated:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

Restatement (Second) of Torts, § 344, Comment f.

Our Supreme Court has explained further that from the perspective of a business invitee, it is reasonable to expect a premises owner to take

- 12 -

precautions against those persons among the general public who are allowed on the premises but who might not be inclined to behave appropriately:

> The reason is clear; places to which the general public are invited might indeed anticipate, either from common experience or known fact, that places of general public resort are also places where what men can do, they might. One who invites all may reasonably expect that all might not behave, and bears responsibility for injury that follows the absence of reasonable precaution against that common expectation.

**Feld v. Merriam**, 485 A.2d 742, 745 (Pa. 1984).

Thus, under the facts alleged, McDonald's owed Massaro the same "duty owed to any business invitee, namely, that [they] would take reasonable precaution against harmful third-party conduct that might be reasonably anticipated." **Paliometros v. Loyola**, 932 A.2d 128, 133 (Pa. Super. 2007) (citations omitted); **see also Rabutino**, 809 A.2d at 939 (same).

**B.**

If a duty of care on the part of a premises owner is established, as it is here, then a court must examine whether an exception would apply so as to absolve the premises owner of liability to a given plaintiff. One such exception is the assumption of risk doctrine, which eliminates a defendant's duty of care to the plaintiff where the plaintiff has consented to relieve the defendant of that duty or the plaintiff has voluntarily participated in an activity which carries an inherent risk of the very damages which the plaintiff sustained. **See generally Valentino v. Philadelphia Triathlon, LLC**, 209 A.3d 941, 945 (Pa. 2019); **see also Carrender v. Fitterer**, 469 A.2d 120, 125 (Pa. 1983)

(equating a plaintiff's assumption of the risk with a defendant's lack of a duty to protect against such risks).

Courts have stressed that the assumption of risk doctrine is a rather difficult exception to satisfy:

> Assumption of the risk is established as a matter of law only where it is beyond question that the plaintiff voluntarily and knowingly proceeded in the face of an obvious and dangerous condition. Voluntariness is established only when the circumstances manifest in a willingness to accept the risk. Mere contributory negligence does not establish assumption of the risk. Rather, a plaintiff has assumed the risk where he has gone so far as to abandon his right to complain and has absolved the defendant from taking any responsibility for the plaintiff's injuries. In order to prevail on assumption of the risk, the defendant must establish both the awareness of the risk and the voluntariness prong.
>
> . . . .
>
> A trial court should not, therefore, decide the issue as one of duty or lack thereof; instead, the issue should go to the jury as one of comparative negligence. As noted in the comment to the Restatement [(Second) of Torts] discussing implied assumption of risk, "Since interpretation of conduct is seldom so clearly indicated that reasonable men could not differ as to the conclusion, it is ordinarily a question for the jury whether what the plaintiff has done is a manifestation of willingness to accept the risk." Restatement (Second) of Torts § 496C cmt. h (1965).

*Staub v. Toy Factory, Inc.*, 749 A.2d 522, 529-30 (Pa. Super. 2000).

In the present case, the trial court reasoned in part that Massaro had assumed the risk of the assault by coming to a McDonald's restaurant he knew to be dangerous and then remaining in the restaurant once a threat appeared. However, the trial court appears to have overlooked two critical points that were clearly established by the complaint.

First, there was no allegation by Massaro that he knew in advance of the day in question that (a) he was taking a physical risk by mentoring a student in his local McDonald's, or (b) that restaurant employees would do nothing to intercede after an unhinged man (Gordon) directed a prolonged, threatening, racist tirade against him. In fact, Massaro specifically denied having any prior knowledge of the threat which Gordon posed on the day in question. **See** Second Amended Complaint, at ⁋ 50. This denial made the issue of Massasro's prior knowledge of the danger a disputed question of fact for the jury to resolve.

Second, it was never alleged by Massaro that he *willingly* remained in the restaurant after a threat from Gordon became apparent. Rather, Massaro clearly asserted in his complaint that the man threatening him had warned that he would be attacked as soon as he left the restaurant, leaving Massaro no choice but remain there. **See id.** at ⁋⁋ 24-26.

These allegations of fact had to be accepted as true at the preliminary objection stage, precluding the trial court from determining that Massaro voluntarily and knowingly assumed the risk of remaining in the restaurant for as long as he did. Even assuming that there was some evidence that Massaro could have done something more to protect himself, this would be an issue of comparative negligence to be resolved by the jury. **See Staub**, 749 A.2d at 529. The trial court therefore erred as a matter of law in ruling that the

- 15 -

assumption of risk doctrine completely eliminated McDonald's duty of care to Massaro.

## C.

We further note that the trial court offered a dubious policy rationale to justify its finding that no duty of care should be imposed on McDonald's in this case.

The existence of a legal duty may sometimes be resolved as a matter of law based on several factors outlined by the Pennsylvania Supreme Court:

> The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

*Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000).

As is clear from the *Althaus* decision and the enumerated factors themselves, the public policy concerns discussed above would typically relate to broad classes of individuals whose legal relationships are not yet settled. *See Alderwoods (Pennsylvania), Inc. v. Duquesne Light Co.*, 106 A.3d 27, 40 (Pa. 2014) (explaining that the *Althaus* actors are "more relevant to the creation of new duties than to the vindication of existing ones."). It is unnecessary "to conduct a full-blown public policy assessment in every instance in which a longstanding duty imposed on members of the public at large arises in a novel factual scenario. Common-law duties stated in general

terms are framed in such fashion for the very reason that they have broad-scale application." ***Dittman v. UPMC***, 196 A.3d 1036, 1046 (Pa. 2014) (quoting ***Alderwoods***, 106 A.3d at 40).

In the present case, there can be no doubt that a premises owner running a restaurant open to the public owes a duty of care to business invitees. This makes the ***Althaus*** factors inapplicable. Moreover, the trial court tacitly recognized the existence of a duty owed by McDonald's to Massaro because it found he had assumed the risk of being in the restaurant. The assumption of risk doctrine could not logically come into play unless the trial court had first presupposed that, as a paying customer on the premises, McDonald's had a duty to take reasonable steps to protect him from known dangers.

Regardless of the inconsistency in those findings, the trial court appears to have only entered the order of dismissal because it misconstrued the nature of Massaro's legal claims. In its opinion, the trial court suggested that no duty existed because a premises owner should not be made into "absolute" guarantors of an invitee's safety. The trial court was concerned that by making franchisees liable for "any and all harm that could occur to others" on their premises, the costs would deter the opening of "businesses in certain communities." Trial Court Opinion, 11/30/2021, at 6.

Respectfully, such concerns are unfounded here. To begin with, Massaro never argued such a broad scope of duty on the part of McDonald's or premises

owners in general; nor would he need to in order to prevail. Massaro's claims were predicated on McDonald's duty to act with reasonable care. He asserted that McDonald's employees knew or should have known of the danger posed by the person who attacked him, and that this duty of care was breached when no reasonable steps were taken to protect him from that danger. Massaro never sought to hold McDonald's absolutely liable for what happened, and it was therefore improper for the trial court to dismiss his claims on the ground that absolute liability does not apply.

Moreover, we do not agree with the trial court's assessment that imposing a duty of care on McDonald's in this case would be an undue burden. On the one hand, it was alleged that restaurant employees could clearly observe Massaro being harassed and physical assaulted for an hour by a person they had long known to be a violent nuisance. Furthermore, it would have taken minimal effort by restaurant employees to reduce or even eliminate the threat. They could have prohibited Gordon from entering the restaurant that day, called the police immediately once the harassment against Massaro began, or come to Massaro's aid when he asked for help. Under the circumstances alleged in the complaint, it clearly would have been reasonable for McDonald's to aid Massaro in *some* manner.

Thus, the trial court erred as a matter of law in sustaining McDonald's preliminary objection, and the case must be remanded for further proceedings.[3]

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/2/2022

---

[3] Our holding as to the existence of a legal duty makes it unnecessary for us to separately examine any additional issues raised in the parties' briefings.