J-A01003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DULCE HUERTAS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EL BOCHINCHE RESTAURANT AND | : | No. 248 EDA 2022 |
| RUTHMIRA GIRALDO | : | |

Appeal from the Judgment Entered January 3, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  181002851

BEFORE:    LAZARUS, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED JANUARY 24, 2023**

In this premises liability action, Dulce Huertas (Appellant) appeals from

the judgment entered in the Philadelphia County Court of Common Pleas,

following a jury trial, in favor of defendants El Bochinche Restaurant and

Ruthmira Giraldo (collectively, Appellee).  Appellant first contests the trial

court's evidentiary rulings regarding: (1) the hearsay exceptions for a

statement made during medical treatment and business records;[1] and (2) the

rule of completeness, which governs the admission of a part of a writing in

order to correct a misleading impression created by another part of the

_____

[1] **See** Pa.R.E. 803(4), (6).

writing.[2]  Appellant also challenges the timeliness of the trial court's mid-trial granting of her motion *in limine*, which allegedly permitted Appellee's opening argument to refer to the subsequently precluded evidence.  We affirm.

## I.  Facts

El Bochinche Restaurant is located on North 5th Street in Philadelphia. Giraldo is the proprietor.  On the evening of October 22, 2016, Appellee hosted a private party, on its premises, for family and friends.  A security guard, Larry Tucker, checked the identifications of patrons and monitored the festivities. In this matter, Appellant generally avers: (1) Appellee negligently failed to protect her from reasonably foreseeable injuries; (2) Appellant was assaulted by a patron, Jose Mina, whom she did not know; and (3) Appellant suffered injuries as a result.[3]  Appellant's Complaint, 10/19/18, at ¶¶ 8-9.

We first review the pertinent trial testimony.  Giraldo, the proprietor, testified to the following:[4]  she has been friends with Jose Mina for approximately 20 years.  N.T. Vol. I, 6/22/21, at 183.  Mina arrived at the

---

[2] **See** Pa.R.E. 106.

[3] In her complaint, Appellant also raised a claim of a Dram Shop Act violation, averring Appellee wrongfully provided alcohol to a visibly intoxicated Mina. **See** 47 P.S. § 4-493(1) (it shall be unlawful for liquor licensee to sell or furnish liquor to any person visibly intoxicated); **Juszczyszyn v. Taiwo**, 113 A.3d 853, 858 (Pa. Super. 2015) ("A violation of the Dram Shop Act is deemed negligence *per se*.").  However, this claim was abandoned by the time of trial.

[4] Giraldo, Appellant, and several other witnesses testified with a Spanish interpreter.

party around 10:00 or 10:30 p.m. with four people, including Appellant. *Id.* at 143-44, 184. Mina introduced his friends, again including Appellant, to Giraldo. *Id.* at 144. Later that night, Giraldo observed Appellant and another woman fighting and pulling each other's hair. *Id.* at 148; N.T. Vol. II, 6/23/21, at 31. Mina separated the two women, and Security Guard Tucker escorted them outside. N.T., 6/22/21, at 148-49. Giraldo stated Mina was not intoxicated that night and she did not see him hit anyone. N.T., 6/22/21, at 183-86, 189; N.T., 6/23/21, at 34.

Security Guard Tucker testified that when Appellant arrived at the party, she appeared "tipsy." N.T. Vol. III, 6/24/21, at 57-58. Later, he was informed "something [was] going on" in the back of the restaurant, and he observed Appellant and another woman "tussling." *Id.* at 54, 55, 62, 78. Tucker gave commands to stop, separated the women, and escorted them out. *Id.* at 55-57. Tucker denied there was anyone else separating the women, but agreed that no man was involved in the fight. *Id.* at 82, 83.

Meanwhile, Appellant provided a different account of events. She testified to the following: she arrived at the party alone and met her female friend there. N.T. Vol. VI, 6/29/21, at 26, 28. Later in the night, Appellant went to the bathroom and saw a young woman, on the floor, with her face bleeding and appearing to have "been beat up." *Id.* at 31. Appellant helped the woman clean up. *Id.* Outside the bathroom, Appellant offered to take her home. *Id.* A man, whom Appellant did not know and who appeared to

- 3 -

be intoxicated, "mov[ed] through the crowd" and hit Appellant three times in her face. *Id.* at 31, 33. He had a gun. *Id.* at 32. Other men intervened to help Appellant, and one man drove Appellant home in her car. *Id.* at 32-33. Appellant then drove herself to the police station.[5] An officer took her to El Bochinche Restaurant, but the man who hit her was no longer there.[6] *Id.* at 34. Around 5:30 a.m., Appellant sought treatment for her left eye area at the emergency department at Nazareth Hospital, and she was transported to Temple University Hospital for surgery. *See id.* at 35-37; Trial Ct. Op., 6/23/22, at 4. Appellant gave a statement to police a few days later.

Philadelphia Police Detective James Sloan testified that he interviewed Appellant on October 26, 2016, three days after the alleged incident. N.T., 6/23/21, at 102. At trial, he read aloud her written interview, which was consistent with her testimony — that in the restaurant she saw a young woman who appeared to have been beaten up; Appellant helped her; and a man hit her three times in the face. *Id.* at 103. Appellant gave a description of the man, but did not know him. *Id.* at 104, 106. Detective Sloan

_____

[5] Appellant initially went to the 25th Police District, but was informed it was not "the right corresponding district," and an officer took her to the appropriate district. N.T., 6/29/21, at 34.

[6] Giraldo similarly testified that approximately an hour and a half after her removal, Appellant returned to the restaurant with a police officer, stated they were looking for someone, but left when they did not see him. N.T., 6/22/21, at 145.

- 4 -

attempted to retrieve surveillance video from El Bochinche Restaurant, but the videos from that night "had been taped over." *Id.* at 111. Fifteen days later, Appellant informed Detective Sloan she learned the man was named Jose Mina. *Id.* at 107-08. Appellant provided his address and a description of his car and license plate. *Id.* at 108. Mina did not testify at trial.[7]

## II. Procedural History

Appellant filed the underlying complaint on October 19, 2018, raising one count of negligence against Appellee. On June 19, 2021, the Saturday before trial was to begin, Appellant filed a motion *in limine* to preclude evidence of her prior, unrelated automobile accidents and assaults. Appellant's Motion *in Limine* to Preclude Evidence of Other Incidents, 6/19/21, at 3-5. The court heard argument on the morning of trial, but deferred a ruling. In opening arguments, however, Appellant referred to these prior incidents, and then Appellee did the same. N.T., 6/22/21, at 87-88, 90. Later, mid-trial, the court **granted** Appellant's motion to preclude the evidence. N.T., 6/29/21, at 100.

The witnesses testified as summarized above. Pertinent to Appellant's claims on appeal, we note the following evidentiary rulings. First, the trial

---

[7] Detective Sloan testified Mina was charged for this alleged assault against Appellant, was arrested in Florida, and had a preliminary hearing, but the detective did not know the current status of the criminal charges. N.T., 6/23/21, at 117-19.

court admitted, over Appellant's objection, a statement in Appellant's Nazareth Hospital record: "Pt [Appellant] reports she was punched in [one] eye last night while walking down the street." **See** N.T., 6/29/21, 7-11; Nazareth Hospital EDM *Live*, 10/23/16 (Nazareth Statement). However, the trial court denied Appellant's request to admit a statement from her Temple University Hospital, Ophthalmology Department record:

> [Appellant] was at a restaurant/bar Saturday night – at about [1:00 a.m. 10/23. S]he was assisting a young woman on her way from the bathroom. An unknown male punched her about the left side of her face around the eye three times with a closed fist. . . .

Temple Health Report, 10/24/16, at 1 (Temple Statement); **see also** N.T., 6/29/21, at 95-97

On July 6, 2021, the jury found in favor of Appellee. On the verdict slip, the jury indicated its finding, in response to the first question, that Appellee was not negligent. The jury thus did not reach the remaining questions regarding: the causation of Appellant's injuries; Appellant's own negligence; and the amount of damages.

Appellant filed a timely post-sentence motion, which the trial court did not rule on. Upon praecipe by Appellant, judgment was entered on January 3, 2022, in favor of Appellee. Appellant filed a timely notice of appeal and a

court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[8]

### III.  Statement of Questions Involved

Appellant presents four issues for our review:

1.   Whether the trial court erred and abused its discretion by denying Appellant's post- trial motion request for the trial court to vacate the verdict and [o]rder a new trial.

2.   Whether the trial court improperly permitted [Appellee] to enter into evidence and publish to the jury a narrative statement from Appellant's Nazareth Hospital medical records, despite the same being unreliable hearsay, over Appellant's strenuous objections.

3.   Whether the trial court improperly prohibited Appellant from bringing out a narrative statement from Appellant's Temple Hospital medical records that would have completely contradicted

_____

[8] Appellant's Rule 1925(b) statement set forth the following two claims:

1.   The trial court committed an error of law and abuse of discretion by **not** granting [Appellant's] post-trial motion request for the trial court to vacate the verdict and Order a new trial.

2.   The trial court committed an error of law and abuse of discretion by committing the several serious erroneous evidentiary rulings at the trial of this matter, as described in [Appellant's] post-trial motion.

Appellant's Statement of Errors Complained of Upon Appeal Pursuant to Pa.R.A.P. 1925(b), 2/15/22, at 1-2.  The first claim baldly challenges the denial of her post-trial motion, without stating any particular claim.  The second issue similarly, vaguely refers to "several serious evidentiary rulings." **See id.**  We remind Appellant's counsel that "[a]n overly vague or broad Rule 1925 statement may result in waiver[,]" and a "Rule 1925(b) statement must be detailed enough so that the judge can write a Rule 1925(a) opinion[.]" **See Majorsky v. Douglas**, 58 A.3d 1250, 1258 (Pa. Super. 2012) (citations omitted).

a narrative of "fraud" that was promulgated by Appellee[ ] based upon an incomplete set of records[.]

4.  Whether the trial court failed to timely rule upon a motion *in limine* filed by Appellant, with the effect that [Appellee was] permitted to repeatedly call Appellant a liar during their opening statement with reference to "other incidents" that the trial court later acknowledged were not relevant to this case and which were not allowed to be brought into evidence.

Appellant's Brief at 3-4.

## IV.  Standard of Review, General Hearsay Rule, & Negligence Law

We note the relevant standard of review:

We review a trial court's decision concerning the admissibility of evidence for an abuse of discretion.  "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record."  In addition, before a ruling on evidence constitutes reversible error, it must have been harmful or prejudicial to the complaining party.

*Adams v. Rising Sun Med. Ctr.*, 257 A.3d 26, 33 (Pa. Super. 2020)

(citations omitted).

We consider the general rule against hearsay:

"'[H]earsay' is defined as an out-of-court statement, which is offered in evidence to prove the truth of the matter asserted." [*See* Pa.R.E. 801.]  Generally, hearsay is inadmissible because it is deemed untrustworthy since it was not given under oath and subject to cross-examination.  However, the law recognizes that there are some circumstances attendant to the making of out-of-court statements that provide sufficient guarantees of their trustworthiness to depart from the requirement that the declarant be subject to cross-examination.  That is the rationale underpinning exceptions to the hearsay rule.  Thus, it is burden of the proponent of hearsay evidence to convince the court of the admissibility of the evidence under an exception before such testimony will be admitted.

- 8 -

***Adams***, 257 A.3d at 35-36 (some citations omitted).

Finally, we note that to prove negligence, a plaintiff must establish there was:

"(1) a legally recognized duty that the defendant conform to a standard of care; (2) the defendant breached that duty; (3) causation between the conduct and the resulting injury; and (4) actual damage to the plaintiff."

The duty element of negligence is akin to the duty element in a claim of premises liability, as both are defined by a reasonableness standard: "The duty owed to a business invitee is the highest duty owed to any entrant upon land. The landowner is under an affirmative duty to protect a business visitor not only against known dangers but also against those which might be discovered with reasonable care."

***Massaro v. McDonald's Corp.***, 280 A.3d 1028, 1035-36 (Pa. Super. 2022) (citations omitted).

## V. Admission of Nazareth Hospital Statement

In her first issue, Appellant avers the trial court erred in admitting, as unreliable hearsay, the statement in Nazareth Hospital record. Appellant's Brief at 10. As stated above, this statement was, "[Appellant] reports she was punched in [one] eye last night while walking down the street[.]" Nazareth Statement.

By way of background, we first summarize the following: at trial, Appellee sought to admit the statement under two hearsay exceptions — as a

Pa.R.E. 803(4) statement made in the course of medical treatment[9] and a Pa.R.E. 803(25) admission by a party-opponent.[10]  N.T., 6/29/21, at 7.  The trial court agreed the statement was admissible under both exceptions and, furthermore, under the business-record exception.[11]  N.T., 6/29/21, at 10-12. In its opinion, the court addresses the admission of the evidence under all three exceptions.  Trial Ct. Op. at 5-8.

On appeal, Appellant first avers:

Contrary to the trial court's ruling, the Nazareth Statement was not admissible as a **prior inconsistent statement**[,] because [Appellee] failed to establish that it reliably recorded [Appellant's] own words — it was neither established that the person who recorded the statement wrote down [Appellant's] verbatim words nor that a translator was present to translate [Appellant's] words since she did not fluently speak English.  . . .

_____

[9] **See** Pa.R.E. 803(4) (the following is not excluded by general rule against hearsay: a statement that "(A) is made for — and is reasonably pertinent to — medical treatment or diagnosis in contemplation of treatment; and (B) describes medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof").

[10] **See** Pa.R.E. 803(25)(A) (a party may offer against an opposing party a statement made by that opposing party).

[11] **See** Pa.R.E. 803(6) (a record is not excluded by rule against hearsay if: (A) the record was made at or near the time of the event by someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a "business," (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or other qualified witness, or by certification; and (E) neither the source of information nor other circumstances indicate a lack of trustworthiness).

Appellant's Brief at 10 (emphasis added). We disagree with both components of this argument.

Foremost, it does not appear, as Appellant asserts, that the trial court found the Nazareth Statement was admissible as a prior inconsistent statement. Appellant has not cited the place in the record where the court made such a ruling. **See** Pa.R.A.P. 2119(c) (if reference is made to the evidence, appellant's argument must set forth a reference to the place in the record where the matter referred to appears). Furthermore, even if the court had found a prior inconsistent statement, Appellant's supporting reasoning — whether the statement accurately memorialized what she in fact said — goes to the weight of the evidence, and not to its admissibility under any particular hearsay exception. Accordingly, no relief is due on this line of reasoning.

Next, Appellant asserts the trial court erred in admitting the Nazareth Statement under the business record exception. Appellant contends that if a medical record is admitted under the business record exception, it is "competent to show only the fact of hospitalization, the treatment prescribed, and the complaints and symptoms stated by the plaintiff." Appellant's Brief at 11, *citing* **Williams v. McClain**, 520 A.2d 1374, 1376 (Pa. 1987).

We emphasize, however, that the trial court also found two additional bases for admitting the Nazareth Statement: it was a statement made in the course of medical treatment and it was an admission by a party-opponent. **See** Trial Ct. Op. at 5-7 ("The out-of-court statement was made by . . .

- 11 -

Appellant to her treating physician within hours of sustaining her injuries and was clearly contemplated and communicated for the purposes of a medical diagnosis or treatment[,]" and, "Appellant communicated to her treating physician relevant facts relating to show how she sustained her injuries, and the defense offered the statement in support of its theory that she sustained her injuries outside of El Bochinche Resturante."). *See also* N.T., 6/26/21, at 10-11 (trial court finding, "[I]t was important for the health care providers at Nazareth Hospital to know why [Appellant] went there in the first place.").

On appeal, Appellant does not present any challenge to these bases for admitting the Nazareth Statement. Thus, even if we were to agree with her business records argument, in the absence of any dispute to the other two bases for admission, we would affirm this ruling.[12] Accordingly, no relief is due.

## VI. Preclusion of Temple Hospital Statement

In her second issue, Appellant avers the trial court erred in precluding a statement in her Temple University Health, Department of Ophthalmology record. Appellant's Brief at 13-14. That record stated that Appellant told the medical staff:

---

[12] *See Bank of Am., N.A. v. Scott*, 271 A.3d 897, 908 (Pa. Super. 2022) (this Court may affirm on any legal basis). We emphasize we offer no opinion on the admission of the Nazareth Statement under the business records hearsay-exception.

- 12 -

[Appellant] was at a restaurant/bar Saturday night — at about 1 am 10/23[. S]he was assisting a young woman on her way from the bathroom. An unknown male punched her about the left side of her face around the eye three times with a closed fist. . . .

Temple Statement.

We first set forth the context of the trial court's ruling. The parties argued about the admissibility of the Temple Statement at the same time the trial court considered the Nazareth Statement. **See** N.T., 6/29/21, at 9-10. Citing the rule of completeness, or Pa.R.E. 106, Appellant claimed the Temple Statement and the Nazareth Statement should be considered together as one complete medical record. **See** N.T., 6/29/21, at 9, 12-13, 94. The trial court disagreed, reasoning the Temple Statement would not clarify the Nazareth Statement, and in fact would contradict it. **Id.** at 96-97. Furthermore, the court reasoned, Appellant could not present the Temple Statement because it would not be against a party opponent — that is, Appellant could not present a statement that she herself previously made. **Id.** at 13, 97.

On appeal, Appellant first contends the Temple Statement should have been admitted under Pa.R.E. 613(c) as a prior consistent statement, to rehabilitate her following the presentation of the Nazareth Statement. Appellant's Brief at 14-15. We deem this claim waived for appeal, as it was not raised before the trial court. **See Commonwealth v. Rosser**, 135 A.3d 1077, 1086 (Pa. Super. 2016) (*en banc*) ("Where the trial court denies relief on one theory, a defendant may not attain appellate relief on a new theory for that same relief."); **Commonwealth v. Ryan**, 909 A.2d 839, 845 (Pa. Super.

- 13 -

2006) ("A theory of error different from that presented to the trial jurist is waived on appeal, even if both theories support the same basic allegation of error which gives rise to the claim for relief.") (citation omitted).  We add that Appellant's citations to the trial transcripts, for her objections, all relate to her rule of completeness argument.  *See* Appellant's Brief at 14.  Appellant does not cite any place in the record where she raised a "prior inconsistent statement" argument.  *See* Pa.R.A.P. 2119(c).

Next on appeal, Appellant reiterates her rule of completeness argument. In support, she contends the Temple and Nazareth Statements "are closely related."  Appellant's Brief at 17.  She further reasons "[t]he Nazareth Statement is only one sentence long," and she was "only briefly evaluated [there] before being rushed by ambulance to Temple Hospital[.]"  *Id.* Appellant thus asserts her "full statement of the event was recorded only at Temple."  *Id.* at 18.  Finally, Appellant alleges she was prejudiced, by the preclusion of the Temple Statement, because Appellee was "able to create the false impression that [she] said one thing to the police and jury [but] something else entirely to her medical treaters[.]" *Id.* at 16, 18.  We conclude no relief is due.

Rule 106, "commonly referred to as the 'rule of completeness,'" provides:

**Remainder of or Related Writings or Recorded Statements**

If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of

- 14 -

any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time.

Pa.R.E. 106; ***Commonwealth v. Raboin***, 258 A.3d 412, 422 (Pa. 2021). The rule's comment states:

> The purpose of Pa.R.E. 106 is to give the adverse party an opportunity to correct a misleading impression that may be created by the use of a part of a writing . . . that may be taken out of context. This rule gives the adverse party the opportunity to correct the misleading impression at the time that the evidence is introduced. The trial court has discretion to decide whether other parts, or other writings . . . ought in fairness to be considered contemporaneously with the proffered part.

Pa.R.E. 106, *cmt*. Our Supreme Court has explained Rule 106 is invoked as follows: (1) a writing is introduced; (2) the writing creates "a misleading impression[;]" and thus (3) "the adverse party [may] seek admission of all or part of that or another writing . . . in order to provide context." ***Raboin***, 258 A.3d at 422-23. We conclude no relief is due.

First, we disagree with the trial court's rationale, at trial, that the rule of completeness was inapplicable because the Temple Statement would not serve to clarify the Nazareth Statement, but in fact to contradict it. ***See*** N.T., 6/29/21, at 97. ***See also*** Trial Ct. Op. at 9 ("Appellant's reliance on Rule 106 is misplaced [because the Temple Statement] in no way makes clearer the accuracy of [the Nazareth Statement]."). Indeed, the purpose of admitting a writing under Rule 106 is "to correct a misleading impression" created by another writing introduced by the adverse party. ***See*** Pa.R.E. 106, *cmt.*

- 15 -

However, we agree with the additional reasoning set forth in the trial court's opinion — that the Temple Statement and Nazareth Statement are not, in fact, a part of the same writing. **See** Trial Ct. Op. at 9. The court reasoned:

> Appellant was first taken to Nazareth Hospital where she gave a recorded statement during a distinct medical examination to a distinct medical provider. She was later transported to Temple Hospital — another distinct medical provider — wherein she gave yet another recorded stating during a separate, distinct, medical examination. . . .

**Id.** We are not persuaded by Appellant's arguments to the contrary — that the brevity of both her Nazareth Hospital visit and the Nazareth Statement make it somehow reliant or dependent on the longer Temple Statement and Temple Hospital treatment. **See** Appellant's Brief at 17-18 ("In this context [Appellant's] full statement of the event was recorded **only** at Temple.") (emphasis added). Appellant does not dispute that she visited two unrelated hospital systems. Accordingly, the trial court properly found that that Rule 106 does not apply. **See** Pa.R.E. 106; **Adams**, 257 A.3d at 33.

Additionally, we agree with the trial court's rationale that Appellant was not prejudiced by the preclusion of the Temple Statement. **See** Trial Ct. Op. at 10. **See also Adams**, 257 A.3d at 33. The salient evidence from the Temple Statement that Appellant sought to present was that she incurred the injury at the restaurant. This evidence was merely cumulative of Appellant's trial testimony, as well her recorded interview with Detective Sloan. **See** N.T., 6/23/21, at 103; N.T., 6/29/21, at 31. **See also Commonwealth v. Yocolano**, 169 A.3d 47, 53 (Pa. Super. 2017) (harmless error can be found

- 16 -

where erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence).

Finally, the relevance of the Temple Statement — specifically, the place where Appellant incurred her injury — would ostensibly go to the cause of her injuries. This is but one of the four factors a plaintiff must establish for a negligence claim. **See Massaro**, 280 A.3d at 1035-36. Appellant overlooks that the jury specifically found Appellee was not negligent, under the first factor. Indeed, in so finding, the jury did not reach the second question on the verdict sheet — whether Appellee's negligence was a factual cause of Appellant's injuries. Jury Verdict Sheet, 7/1/21, at 1. Accordingly, no relief is due.

## VII. Timeliness of Trial Court's Ruling on Motion *in Limine*

In her final issue, Appellant asserts the trial court failed to timely rule on her motion *in limine* to preclude evidence of prior incidents. Appellant's Brief at 19. Although the court ultimately granted her motion, Appellant asserts the court's belated decision allowed Appellee to refer to the prior incidents in its opening argument. **Id.** at 19, 22. Appellant thus maintains she was prejudiced. **Id.** We conclude no relief is due.

A trial court has broad powers over the conduct of a trial, and we review a court's ruling on an objection during counsel's opening statement for an abuse of discretion. **See Commonwealth v. Parker**, 919 A.2d 943, 949 (Pa.

2007). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* at 949-50.

We first note that in complaining of the timing of the trial court's ruling, Appellant ignores the timing of her own filing. In its opinion, the trial court explained the following: on June 16, 2021, one week before trial, it conducted a hearing on the parties' pre-trial motions *in limine*. That Saturday, June 19th, Appellant filed an additional motion *in limine*, seeking to preclude evidence of other incidents — two motor vehicle accidents and two assaults — involving herself. *See* Trial Ct. Op. at 10-11.

Monday, June 21, 2021, was a court holiday, and trial was scheduled to begin the next day, June 22nd. Trial Ct. Op. at 11. While Appellee was able to file a response to the motion *in limine* on the 22nd, the trial court was not aware of the new filing until that day. *Id.* Appellant explained the new motion arose from a deposition, which had "just occurred." N.T., 6/22/21, at 30. Nevertheless, the trial court stated its desire to provide both parties with the opportunity to present their issues, even though it would delay the start of trial. *Id.* at 52. *See also* Appellant's Brief at 7 (acknowledging "[t]he trial judge held a very long hearing").

We next summarize the parties' competing arguments. First, Appellant explained that in a deposition, Appellee's expert neurologist was repeatedly

asked about Appellant's prior motor vehicle accidents and assaults. N.T., 6/22/21, at 30. However, Appellant asserted, there was no basis or expert report for a medical causation issue, and thus she sought to exclude any evidence or suggestion that her present injury was the result of a preexisting condition. *Id.* at 30-31. Appellee responded with an entirely different purpose for presenting the evidence: to show Appellant's incredibility. Appellee stated that when Appellee's expert neurologist asked about her medical history and any prior traumas, Appellant denied she had any. *Id.* at 31-32.

The trial court explained it was aware of the "expectant jury awaiting entry to the courtroom," as well as the need for further argument on the motion, and thus deferred a formal ruling. Trial Ct. Op. at 11. Nevertheless, with respect to Appellee's incredibility claim, the court advised the parties that if a witness "make[s] an inconsistency on the stand, [the] other party has a right to cross-examine [and] follow up on that." N.T., 6/22/21, at 52-53. The court stated, "I don't want to elaborate too much on my ruling because I'll leave it up to the parties to take the appropriate action if the situation calls for it[.]" *Id.* at 54.

Appellant's counsel sought clarification on whether their opening arguments could refer to "what the doctors said[.]" N.T., 6/22/21, at 54. The court responded, "[I]f it's going to impeachment or something like that, . . . you're allowed to bring that in[,]" but instructed the attorneys not to discuss

anything they believed, in good faith, would not be admissible during the trial.

*Id.* at 55-56.

Next, in **Appellant's** opening argument, counsel referred to the prior incidents and Appellant's response to questions about them:

> There's some things that have happened to [Appellant] over the years, **couple car accidents, she's been assaulted a couple times**[.] She didn't go to the emergency room and report it, it's not something she thought about until afterward. She didn't feel any effects afterward[.] **And when she's asked about it later, she doesn't really talk about it**[,] she talks about the incident that impacted her, and you're going to hear from her exactly what that is.

N.T., 6/22/21, at 87-88 (emphases added).

Appellee's counsel then stated in opening argument:

> This, ladies and gentlemen, is a fraud. [Appellant] is coming to you telling you something that is completely untrue. It is completely false. . . .
>
> [Appellant's] counsel talked of these various details that will come up, these prior assaults[ and] motor vehicle accidents. . . .
>
> You see, we took [Appellant's] deposition[, which is] sworn testimony[,] under oath. . . .
>
> [Appellant] was specifically asked whether or not she was involved in any motor vehicle accidents. She said, No[.]
>
> She was then shown medical records . . . from [two motor vehicle accidents.]
>
> She was also asked whether or not she was ever assaulted before this incident. And she said, I was not, under oath. [That response] is nothing short of a blatant lie.

N.T., 6/22/21, at 90-92.

As stated above, Appellant's complaint on appeal is that in opening argument, Appellee improperly discussed the prior incidents, which the trial court subsequently ruled were not admissible. She wholly ignores, however, that it was her own counsel who raised it first in opening argument. We thus disagree with Appellant's contention that she was prejudiced by Appellee's opening argument statements. *See Parker*, 919 A.2d at 949.

Furthermore, Appellant also ignores additional discussion by the trial court. The court had given the jury both a preliminary instruction and final instruction that the attorneys' opening statements were not evidence, and that the jury was not to consider the opening statements "as established facts." Trial Ct. Op. at 13, *citing* N.T., 6/22/21, at 73; N.T., 7/1/21, at 6. "The law presumes that the jury will follow the instructions of the court." *Maya v. Johnson & Johnson*, 97 A.3d 1203, 1222 (Pa. Super. 2014) (citation omitted). Appellant presents no argument to the contrary. For the foregoing reasons, we conclude no relief is due on this final issue.

## VIII. Conclusion

For the above stated reasons, we deny relief on Appellant's multiple evidentiary claims. Thus, we affirm the judgment entered in favor of Appellee.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/24/2023